[DEVISE.]

## JACKSON, *ex dem*. ST. JOHN, *against* CHEW.

E. being seised of lands in the State of New-York, devised the same, by his last will and testament, to his son Joseph, in fee, and other lands to his son Medcef, in fee, and added : " It is my will, and I do order and appoint, that if either of my said sons *should depart this life without lawful issue, his share or part shall go to the survivor;* and in case of both their deaths, without lawful issue, then I give all the property to my brother John E., and my sister Hannah J., and their heirs." Joseph, one of the sons, died without lawful is-sue, in 1812, leaving his brother Medcef surviving, who afterwards died without issue : *Held,* that Joseph took an estate in fee, defea-sible in the event of his dying without issue in the lifetime of his brother ; that the limitation over was good as an executory devise ; and on the death of Joseph, vested in his surviving brother Med-cef.

This Court adopts the local law of real property, as ascertained by the decisions of the State Courts, whether those decisions are grounded on the construction of the statutes of the State, or form a part of the unwritten law of the State.

The Court, therefore, considered it unnecessary to examine the ques-tion arising upon the above devise, as a question of general law ; or to review, and attempt to reconcile the cases in the English Courts upon similar clauses in wills, the construction of this clause having been long settled by a uniform series of adjudications in New-York, and having become a fixed rule of property in that State.

ERROR to the Circuit Court for the Southern District of New-York.

The question presented by the special verdict in this case, arose upon the will of Medcef Eden, the elder, bearing date the 29th day of August, 1798, by which will the testator devised to his son Joseph, certain portions of his real and personal property, among which were the premises in ques-tion in this cause, " to have and to hold the same to him, his heirs, executors, and administrators, for ever." In like man-ner he devised to his son Medcef, his heirs and assigns, cer-tain other portions of his property ; and, after making some other provisions, added the following clause : " *Item*. It is

my will, and I do order and appoint, that if either of my said sons should depart this life without lawful issue, his share or part shall go to the survivor. And in case of both their deaths, without lawful issue, then I give all the property aforesaid to my brother, John Eden, of Loftus, in Cleveland, in Yorkshire, and my sister, Hannah Johnson, of Whitby, in Yorkshire, and their heirs." And the question was, what estate Joseph Eden (under whom the lessor of the plaintiff claimed) took in the premises in question. The testator died soon after making his will, leaving his two sons, Joseph and Medcef, living. Joseph died in August, 1812, without issue, leaving his brother Medcef alive. The lessor of the plaintiff claimed title derived from Joseph Eden, under the sale of the premises in question, by virtue of a judgment and execution against him, and sundry conveyances thereafter made of such title as set out in the special verdict. The defendant claimed under a title derived from Medcef Eden, under the above mentioned clause in his father's will, he having survived his brother. If Joseph Eden took an estate tail, it was, by operation of the statute of the State of New-York abolishing entails, converted into a fee simple absolute, and the subsequent limitation became inoperative. That statute (passed the 23d of February, 1786) declares, " That in all cases where any person would, if this act had not been passed, at any time hereafter become seised in fee tail of any lands, by virtue of any devise before made, or hereafter to be made, such person, instead of becoming seised thereof in fee tail, shall be deemed and adjudged to become seised thereof in fee simple absolute." So that if Joseph would have taken an estate tail under the will, if the act of 1786 had not been passed, by operation of the statute he became seised of an estate in fee simple absolute, which was liable to be sold on the judgment against him, and the title under which the lessor claimed would be complete. But if Joseph took an estate in fee, defeasible in the event of his dying without issue, in the lifetime of his brother, (which event happened,) then Joseph's interest in the land became extinct on his death, and the limitation over to his brother Medcef was

good as an executory devise, and the defendant would consequently be entitled to judgment.

A judgment was entered upon the special verdict in the Court below, for the defendant, *pro forma*, by consent of parties, for the purpose of bringing the cause before this Court.

The cause was argued by the *Attorney General*, and Mr. *D. B. Ogden*, for the plaintiff, and by Mr. *Webster*, and Mr. *Wheaton*, for the defendant.

On the part of the plaintiff, it was insisted, that Joseph Eden took an estate tail under the devise to him, which, by the operation of the statute of 1786, was converted into a fee simple absolute. The general rule that the words *dying without issue* import an indefinite failure of issue, was relied on to support this construction of the will.[a] And, although it was admitted that there were circumstances which would limit those words to a definite failure of issue, yet it was denied that there were any qualifying expressions in this devise which would have that effect. There were certainly none such, unless the words, " his share or part shall go to the *survivor*," could be considered as having that effect. The earliest case, which would probably be relied upon to show that these expressions limited the failure of issue *to issue living at the death of Joseph Eden*, was that of *Pells* v. *Brown*,[b] where the testator devised to " Thomas his son, and his heirs, for ever, paying to his brother Richard 20 pounds at the age of 21 years ; and if Thomas died without issue, *living William*, his brother, that then William, his brother, should have those lands to him, his heirs and assigns, for ever, paying the said sum as Thomas should have paid." Thomas having died without issue, and William having survived him, it was determined that this was a contingent fee to William by way of executory devise. Now, to test the authority of this case as to the effect of the word

<div style="margin-right:0">1827.

Jackson
v.
Chew

Jan. 25th.</div>

a The counsel here referred to all the cases cited, and commented on by Mr. Chancellor Kent. in Anderson v. Jackson, 16 *John. Rep.* 405—424.

b *Cro. Jac.* 590.

*survivor*, it was only necessary to refer to *King* v. *Rum-ball*,[a] decided three years before, in which a devise to three daughters, *and if they all died without issue*, then over, was held to create an estate tail; and to the case of *Chadock* v. *Crowly*,[b] determined four years subsequent to *Pells* v. *Brown*, where the same Court held, that the word *survivor* had no such effect as is here attributed to it. In that case the testator devised all his lands in Bradmere to Thomas, his son, and his heirs, for ever, and his lands in Eastleak, to Francis, his son, and his heirs, for ever, and then added: " *Item*. I will that the *survivor* of them shall be heir to the other, if either of them die without issue." This was held to be an estate tail in Thomas. As to the more modern cases of *Porter* v. *Bradley*,[c] and *Roe* v. *Jeffray*,[d] which would be relied upon to show that the term *survivor* had this effect, the remarks of Mr. Justice Story, in *Lillibridge* v. *Adie*,[e] might be applied to these cases, and would, at the same time, illustrate the general question. " In respect to terms of years, and other *personal estates*, Courts have very much inclined to lay hold of any words to tie up the generality of the expression, *dying without issue*, and to confine it to *dying without issue living at the time of the person's decease*. But, in respect to *freeholds*, the rule has been rigidly enforced, and rarely broken in upon, unless there were strong circumstances to repel it.[f] The cases of *Porter* v. *Bradley*, and *Roe* v. *Jeffray*, have gone a great way, but they turn on distinctions, which, though nice, clearly recognise the general rule." In a recent English case, the word *survivors* was relied upon to raise an inference of restrictive intention; but Sir W. Grant held, that the word had the same sense as the word *others*, " as (says he) has

a *Cro. Jac.* 448. S. P. Webb v. Heanig, *Ib.* 415.

b *Cro. Jac.* 695.

c 3 *Term Rep.* 143.

d 7 *Term Rep.* 585.

e 1 *Mason's Rep.* 236.

f *Fearne's Ex. Dev.* 357—361. Butler's ed. 471—476. Cooke v. De Vandes, 9 *Ves.* 197. Dansey v. Griffith, 4 *Maule & Selw.* 61.

been frequently decided."[a] So, in *Massey* v. *Hudson*,[b] in a case of personal property, the presumption that a bequest over to the *survivor* of two persons, after the death of one without issue, was meant as a personal benefit to the survivor, was held to be repelled by the addition of the words *executors, administrators, or assigns.* *Roe* v. *Scott & Smart*,[c] presented precisely the same case with that before the Court ; and yet it was there held, that the indefiniteness was not restricted by force of the word *survivor.* In the present case it could not be considered as having that effect, because the testator, in using the term *survivor,* did not intend the *individual brother* surviving, but the *surviving branch;* consequently, if Medcef had died, having issue, in the life time of Joseph, and Joseph had afterwards died without issue, the issue of Medcef would have taken Joseph's share ; and so, also, in case of any more remote failure.

As to the local decisions in the State Courts of New-York, giving a construction to this and other similar clauses in wills, it was said that the present question did not turn upon the interpretation which the local tribunals had given to the statute of 1786, or upon any other law peculiar to the State ; but that the sole question was, whether Joseph Eden took an estate tail, which was a question of general law ; and if he did, it was incontestible that the statute converted his estate into a fee simple, and, consequently, the plaintiff was entitled to recover. The decisions of the State Courts would receive no more respect in the present case, than in any other question of common law which might come before this Court ; and to show that the State decisions had proceeded upon mistaken grounds, the arguments and authorities urged by Mr. Chancellor Kent, in *Anderson* v. *Jackson*,[d] were relied upon, and enforced with a great variety of illustrations.

a Barlow v. Salter, 17 Ies. 479.
b 2 Meriv. 135.
c 2 Fearne's Ex. Dev. (4th ed.) 209.
d 16 Johns. Rep. 397. 424.

On the part of the defendant, it was admitted that a devise to take effect after a preceding estate in fee simple, upon an indefinite failure of issue, or (which is the same thing) where there are no expressions restricting that failure to a life in being, and the usual allowance for minority and gestation, cannot operate as an executory devise, because it would tend to a perpetual restriction of alienation, and is, therefore, void. But where the failure of issue is definite, and by plain words or necessary implication, declared to take effect, if at all, within a life in being, a limitation by executory devise is valid, and would be sustained both in England and New-York. But the peculiar state of the law of real property in England, would account for the application of a different rule to the construction of these limitations, when applied to real property, from what would prevail in the case of personal property;[a] whilst the institutions of this country might justify and require the application of the same rule to both.

It was not, however, deemed necessary to resort to this distinction, since it was insisted that the construction put upon this devise was sustained by the general current of decisions in Westminster Hall, ever since *Pells* v. *Brown*,[c] which had been called by Lord Kenyon "the magna charta of this branch of the law," and had never been departed from.[d] In that case, the devise over was in the event of the first-taker dying without issue, *living his brother William*; in this case, the devise over is to the *survivor* of the two brothers. In grammatical and legal construction, it is impossible to distinguish between a brother *surviving*, and a brother living at the death of the first taker. All the modern cases confirm the authority of *Pells* v. *Brown*, and it was also sustained by the general principles and analogies of the law.[e] As to the anomalous case of *Chadock* v. *Crow-*

a Forth v. Chapman, 663.

b 1 *North Carolina Law Rep.* 544. 1 *Hen. & Munf.* 301. 20 *Johns. Rep.* 483.

c *Cro. Jac.* 590.

d Rorter v. Bradley, 3 *Term Rep.* 143. Lippitt v. Hopkins, 1 *Gallis.* 460.

e 1 *P. Wms.* 584. 565. Porter v. Bradley, 3 *Term Rep.* 143. Roe v. Jeffray, 7 *Term Rep.* 589. Beacroft v. Broom. 4 *Term Rep.* 440.

*ley,*[a] it was directly contrary to the authority of *Pells* v. *Brown,* and the long series of decisions following it, and, therefore, could not be law, even supposing it to be correctly reported, which might well be doubted. That case states, that if the devise had been, " *that if he died without issue in the life of the other, or before such an age,* that then it should remain to the other, then, *peradventure,* it should be a contingent devise *in tail,* if it should happen, and not otherwise." No lawyer would pretend, at this day, that a devise to one and his heirs, and in case he die without issue in the life of another, or if he died before the age of 21, then over, is an estate tail, either vested or contingent. It is, like the present case, an estate in fee simple, defeasible on the event happening, with a valid executory devise over. The other cases cited by Mr. Chancellor Kent,[b] would all be found to range themselves under one of the following classes : (1.) Where there are no words *to control* the indefinite failure of issue.[c] (2.) Where the first estate is only *for life,* and enlarged by implication to an estate tail by the limitation over, *or failure of issue.*[d] (3.) Where the first taker *left issue,* and the executory devise, in consequence, could not take effect.[e] (4.) Several cases cited against the construction insisted on by the defendant in the present case, which are manifestly in favour of that construction.

a *Cro. Jac.* 695.

b Anderson v. Jackson, 16 *Johns. Rep.* 397—424.

c Tenny v. Agar, 12 *East.* 213. Romilly v. James, 6 *Taunt.* 263. Brice v. Smith, 1 *Willes.* 1. Doe v. Tennereau, *Dougl.* 487. Denn v. Slater, 5 *Term Rep.* 335. Doe v. Ellis, 9 *East,* 382. Hunter v. Haynes, 1 *Wash.* 171   Ide v. Ide, 5 *Mass. Rep.* 500. Royal v. Eppes, 2 *Munf.* 479.

d Webb v. Herring, *Cro. Jac.* 415. King v. Rumball, *Cro. Jac.* 448. Sutton v. Wood, *Camer. & Norw.* 202.

e Roe v. Scott, 2 *Fearne,* 259. Hope v. Taylor, 1 *Burr.* 268. Doe v. Rivers, 7 *Term Rep.* 276. Denn v. Slater, 5 *Term Rep.* 335.

f Kirkpatrick v. Kirkpatrick, 13 *Ves.* 476. Richardson v. Noyes, 2 *Mass. Rep.* 56. Porter v. Bradley, 3 *Term Rep.* 143. Roe v. Jeffray, 7 *Term Rep.* 585. Haver v. Shitz, 3 *Yates,* 205. Ray v. Enslin, 2 *Mass. Rep.* 554. Keating v. Reynolds, 1 *Bay,* 80. Jones Rice, 3 *Dessaus.* 165.

1827.

Jackson
v.
Chew.

In *Massie* v. *Hudson*,[a] the Master of the Rolls considers the words, *executors, administrators, and assigns*, as showing the intent of the testator to vest the interest, and make it transmissible. But, in the present case, there are no words of limitation annexed ; and if it be said they are implied, the same might be said of every legatee, who, if no words of restriction are added, takes an absolute interest transmissible to his executors, &c. But, here, the interest was neither vested nor transmissible. *Barlow* v. *Salter*[b] cannot be reconciled with the general course of English adjudications in cases of personal property, and is entirely inconsistent with the American authorities.[c] As to the notion of the word *survivor* being used to indicate the *surviving branch or stock*; in the recent case of *Wollen* v. *Andrews*,[d] it is expressly laid down, that " survivor or survivors," mean not the surviving *stocks*, but the surviving *children*. And Mr. *Fearne*[e] observes, that though the authorities have established on solid ground the power of testamentary dispositions of contingent and executory estates, and possibilities coupled with an interest, and such as would be descendible to the heir of the object of them dying before the contingency or event on which the vesting or acquisition of the estate depended ; yet the decisions do not appear to reach those cases, where the contingent interest is not transmissible from any person, until the contingency decides him to be the object of the limitation. Now it has been decided, that a testamentary disposition of an estate, devised to the survivor of two persons, while both are alive, is not valid, although the person making the disposition becomes the survivor; because, till by the death of the other he so becomes the survivor, he has no interest whatever in the land.[f] So, also, Mr. *Preston* observes, that mere possibilities to persons not ascertained, *as to the survivor of several persons*, are not coupled with an

*a* 2 *Meriv.* 130.

*b* 17 *Ves.* 479.

*c Fearne*, 481. note. 1 *Serg. & Rawle*, 144—150. 3 *Serg. & Rawle*, 470.

*d* 2 *Bingh.* 126.

*Ex. Dev.* (6th Lond. ed.) 545.

Doe v. Tompkinson, 2 *Maub. & Selw.* 165.

interest, and are not devisable, nor, he apprehends, transferrable to assignees under a commission of bankrupt.[a] So, again : "titles under possibilities or expectancies are of two descriptions. (1) Possibilities coupled with an interest. (2) Possibilities without any interest. Those possibilities which are not coupled with an interest are not devisable, but all titles under them may be barred, excluded, or bound by estoppel. Such are the expectancies of an heir apparent or presumptive, or of persons where the gift is *to the survivor*, and both are living."[b] So a power given to the survivor of two persons, cannot be well executed by both of them while alive.[c]

In addition to the argument upon the case, as a question of general law, the counsel referred to the decisions of the State Courts of New-York, as conclusively establishing the construction contended for on the part of the defendant in error, as a settled rule of property in that State ;[d] and to the decisions of this Court, showing that the law thus established by a long series of adjudications in the local tribunals, would be respected here.[e]

Mr. Justice THOMPSON delivered the opinion of the Court, and after stating the case, proceeded as follows :

Questions growing out of devises of this description, are among the most difficult and intricate doctrines of the law ; and from the numerous cases that have arisen, as found reported in the books, it will be seen, that nice and almost imperceptible distinctions have been resorted to, with the avowed object of carrying into effect the intention of the testator. To review the cases that have arisen in the En-

*1827.*

*Jackson*
*v.*
*Chew.*

*Feb. 8th.*

a 1 *Preston on Estates*, 76.

b *Preston's Abstr.* tit. 204.

c *Sugd. Powers*, 162.   3 *Bro. Ch.* 510.

d Fosdick v. Cornell, 1 *Johns. Rep.* 440.   Jackson v. Blanshaw, 3 *Johns. Rep.* 292.   Moffat v. Strong, 10 *Johns. Rep.* 12.   Jackson v. Staats, 11 *Johns. Rep.* 337.   Jackson v. Anderson, 16 *Johns. Rep.* 382.   Wilkes v. Lion, 2 *Cowen's Rep.* 333

e 5 Cranch, 32.   9 *Cranch*, 98.   6 *Wheat. Rep.* 127.   7 *Wheat. Rep.* 550.   8 *Wheat. Rep.* 535—542.   10 *Wheat. Rep.* 159.   11 *Wheat. Rep.* 367, 8.

1827.

Jackson
v.
Chew.

*Unnecessary to discuss the case as a question of general law. Application of the principle, that the local decisions are · to control.*

glish Courts on these questions, would be an arduous, and to reconcile them, a difficult, if not a fruitless undertaking. Nor are the decisions of the State Courts in our own country in perfect harmony with each other. It is not deemed necessary, however, in the present case. o enter into an examination of these various decisions, either for the purpose of attempting to reconcile them, or to extract from them principles, which might be applicable to the case now before the Court, if the question was considered entirely an open question. The inquiry is very much narrowed, by applying the rule which has uniformly governed this Court, that where any principle of law, establishing a rule of real property, has been settled in the State Courts, the same rule will be applied by this Court that would be applied by the State tribunals.

This is a principle so obviously just, and so indispensably necessary, under our system of government, that it cannot be lost sight of.

*Decisions in the State Courts upon this case, and other analogous cases, reviewed.*

The inquiry, then, is, whether the question arising in this case, has been so settled in the State Courts of New-York, as to be considered at rest there. Numerous cases have come before those Courts upon this question; some on the very clause in the will now under consideration; others on wills containing clauses very analogous, and which, in those Courts at least, have been considered identical with the present.

I shall proceed to notice some of the leading cases there decided, to see how the law on this question is held to have been settled in that State. In the case of *Anderson* v. *Jackson*, (16 *Johns. Rep.* 382.) decided in the Court for the Trial of Impeachments and Correction of Errors, in the year 1819, the decision turned solely upon the construction of this very clause in the will of Medcef Eden, the elder, affirming the judgment of the Supreme Court, which had been given without argument, the Court considering the question raised to have been settled by former cases; and the Court of Errors, in affirming the judgment of the Supreme Court, put it principally upon the same ground, and considered the question at rest by the repeated and uniform decisions of the Supreme Court for the last twelve or fourteen years. It may be useful to recur to the progress of

these decisions, to see the steady and uninterrupted course of the Courts upon the question, and how firmly the principle has become ingrafted in the law of that State as a rule of landed property.

The first case that arose, was that of *Fosdick* v. *Cornell*, (1 *Johns. Rep.* 440.) in the year 1806.   By the will there in question, the devise over was, " My mind and will is, that if any of my said sons, William, Jacob, Thomas, and John, or my daughter Mary, shall happen to die without heirs male of their own bodies, then that the lands shall return to the survivors, to be equally divided between them." And it was held by the Court unanimously, that this clause did not create an estate tail, but was to take effect as an executory devise.   In the case of *Anderson* v. *Jackson*, the doctrine of that case was considered applicable to the Eden will, and to govern its construction.   And it was not pretended by the dissenting members of the Court of Errors, but that if the case of *Fosdick* v. *Cornell* was correctly decided, it would govern the case then before the Court.   And the whole strength of the argument in the very elaborate opinions given by the dissenting members, was applied to the purpose of endeavouring to show that the decisions in that case, and in those which rested upon it, had proceeded upon incorrect views of the law, as decided both in the English and American Courts.   Chancellor Kent here took occasion to announce his change of opinion on this question, and to say, that although he did not deliver the opinion of the Court, he would not shelter himself under his silence, but partook of the error; but that he had discovered, years ago, that the case of *Fosdick* v. *Cornell* was decided on mistaken grounds.   If this should be admitted, (which I certainly do not mean to admit,) it is an error which has been so repeatedly sanctioned by all the Courts of that State, for the last twenty years, that it has ripened into a settled rule of law.   And a reference to the cases which followed that of *Fosdick* v. *Cornell*, will show that it has become a rule so fastened upon the law of real property in that State, as to make it unwise and unsafe to disturb it.

In the case of *Jackson* v. *Blanshaw*, (3 *Johns. Rep.* 289.) decided in the year 1808, the question before the Court

1827.

Jackson
v.
Chew.

arose upon a will, wnere the testator devised "all his estate, real and personal, to his six children, to be equally divided between them, share and share alike ; but if any of them died before arriving at full age, or without lawful issue, that then his, her, or their part, should devolve upon and be equally divided among the surviving children, and to their heirs and assigns, for ever." This was held to be a good devise over by way of executory devise; and Chief Justice Kent, in delivering the opinion of the Court, refers to the case of *Fosdick* v. *Cornell*, and observes, that the Court there *reviewed the leading authorities*, and held, that the devise over was a good executory devise, and that the true construction was, a devise over to take effect on failure of male issue during the life of the first taker. That the ancient case of *Hanbury* v. *Cockrill*, (1 *Roll. Abr.* 835.) was quite analogous in favour of the executory devise. The devise there was to the two sons in fee, with a proviso, that if either died before they should be married, or before they should attain the age of 21 years, and without issue of their bodies, then his share should go to the survivor. That Lord Kenyon, in the two cases of *Porter* v. *Bradly*, and *Roe* v. *Jeffery*, (3 *Term Rep.* 143. 7 *Term Rep.* 589.) supported this *established* construction in a very forcible manner ; and that the case before the Court could not be distinguished in principle from those in which this rule of law is *settled beyond controversy*. Again ; in the case of the *Executors of Moffat* v. *Strong*, (10 *Johns. Rep.* 12.) decided in the year 1813, the testator, after giving certain specific parts of his real and personal estate to his sons, adds this provision : " And if any of my sons aforesaid should die without lawful issue, then let his or their part or parts be divided equally among the survivors." Although this was a case of personal property, the judgment of the Court did not rest upon that distinction. Chief Justice Kent, in delivering the opinion of the Court, says, " The greatest difficulty that arises in starting the main point for consideration, is to avoid being overwhelmed and confounded by the multitude of cases. Lord Thurlow said there were fifty-seven cases on this point, and we know they have greatly increased since." And, after reviewing many of the leading cases, the Chief

Justice observes, if the limitation rested solely on the words 1827.
dying without issue, it would fail; but the will proceeds,
and gives the part of the son so dying without issue to the Jackson
survivors. The term *survivors* will be found to rescue the Chew.
limitation from the operation of the general principle, and
to bring it within the reach of other cases, which have ad-
judged *that* expression to be the cause of a different con-
struction, and for the reason that it could not have been in-
tended that the survivor was to take only after an indefinite
failure of issue, as that event might happen long after the
death of all the survivors. Thus stood the question when
the Chief Justice was transferred to the Court of Chancery,
no diversity of opinion having existed on the bench upon
the question, according to the reported cases. The next
case that came before the Court was that of *Jackson* v.
*Staats*, (11 *Johns. Rep.* 337.) in the year 1814; and the con-
struction of a similar clause in a will was under considera-
tion. Spencer, J., in delivering the opinion of the Court, ob-
serves, that "the point, whether the limitation over ope-
rates as an executory devise, or to create an estate tail, ad-
mits of very little difficulty. The case of *Fosdick* v. *Cor-
nell* is in point, that this is a good executory devise;" and
adds, "I believe none of us have ever doubted the correct-
ness of the decision in that case, and it would be a waste of
time to review the authorities there cited." So that the law
on this point was considered settled, and not open to argu-
ment, until it was again stirred, in the case of *Anderson* v.
*Jackson*, in the Court of Errors, upon the clause in Eden's
will, now under consideration; and the rule of construction
settled in the Supreme Court, was considered applicable to
this will, and governed the decision in the Court of Errors.
Again, in the year 1823, the construction of this same clause
in Eden's will came before the Supreme Court, in the case
of *Lion* v. *Burtis*; (20 *Johns. Rep.* 483.) and Spencer, Ch. J.,
in delivering the opinion of the Court, referred to the case
of *Anderson* v. *Jackson*, in the Court of Errors, and said, it
was there decided that the devise to Joseph Eden *did not
create an estate tail*, but that the devise over, upon the event
of his dying without issue, was a limitation over as an exe-
cutory devise to Medcef. the survivor. That the opinion

of the Court was, that the devise over to the survivor did not depend on an indefinite failure of issue, but only on a failure of issue at the time of Joseph's death. "This, then," said the Chief Justice, " is the law of the land, and must govern every other case coming within the same principle. And I must be allowed to say, that subsequent reflection has confirmed my conviction of the soundness of the decision in the Court of Errors. *Stare decisis* is a maxim essential to the security of property. The decisions of Courts of law become a rule for the regulation of the alienation and descent of real estate; and when that rule has been sanctioned and adopted in our Courts, it ought to be adhered to, unless manifestly wrong and unjust."

Other questions were, however, embraced in this case, and it was afterwards brought before the Court of Errors, (2 *Owen*, 333.) and a preliminary question was made, whether the Court would hear an argument on the point decided in the case of *Anderson* v. *Jackson*. But as that question was so involved with other questions in the cause, it was found difficult entirely to separate them, and the argument proceeded; the President of the Court at the same time observing, that he should suppose counsel would not question any point plainly decided in *Anderson* v. *Jackson*, both in its principle and object, and that he had no doubt the Court would abide by its decision in that case. In the course of the argument, when the bearing of the case of *Anderson* v. *Jackson* was fully understood, it was proposed to stop the counsel, so far as the decision in that case was called in question ; and the Chancellor (Sanford) expressed his determination to adhere to that decision. That he understood it to fix distinctly a construction upon the clause which devises to Joseph Eden, and was prepared to say it did not carry an estate tail, but a fee determinable on his death without issue then living. And although the counsel were allowed to proceed, and the question again fully argued, the Court, when they came to pronounce judgment, disclaimed, in very strong language, any intention to call in question the decision of *Anderson* v. *Jackson*. Cramer, Senator, observes : " The Court has been called upon, in a very solemn manner, to review its decision on an important

rule of law affecting titles to real property. But we have not, in my view of the subject, the power (and by power I mean right) now to question or impeach that judgment rendered by this Court, and founded on the uniform decisions of the Supreme Court during a period of more than seventeen years. Wills have been made, and estates settled, on the principle of these cases, which have been deemed and treated as the settled law of the land." And the judgment of the Supreme Court was unanimously affirmed, with the exception of one Senator.

After such a settled course of decisions, and two of them in the highest Court of law in the State, upon the very clause in the will now under consideration, deciding that Joseph Eden did not take an estate tail, a contrary decision by this Court would present a conflict between the State Courts and those of the United States, productive of incalculable mischief. If, after such an uninterrupted series of decisions for twenty years, this question is not at rest in New-York, it is difficult to say when any question can be so considered. And it will be seen by reference to the decisions of this Court, that to establish a contrary doctrine here, would be repugnant to the principles which have always governed this Court in like cases.

It has been urged, however, at the bar, that this Court applies this principle only to State constructions of their own statutes. It is true, that many of the cases in which this Court has deemed itself bound to conform to State decisions, have arisen on the construction of statutes. But the same rule has been extended to other cases; and there can be no good reason assigned why it should not be, when it is applying settled rules of real property. This Court adopts the State decisions, because they settle the law applicable to the case; and the reasons assigned for this course, apply as well to rules of construction growing out of the common law, as the statute law of the State, when applied to the title of lands. And such a course is indispensable, in order to preserve uniformity, otherwise the peculiar constitution of the judicial tribunals of the States and of the United States, would be productive of the greatest mischief and confusion.

1827.

Jackson
v.
Chew.

This Court adopts the local law of real property, as ascertained by the decisions of the State Courts; whether those decisions are grounded on the interpretation of statutes; or on unwritten law which has become a fixed rule of property in the State.

Jackson
v.
Chew.

Cases in
which this
Court has re-
cognised the
State decisions
as conclusive
on questions of
local law.

The case of *M'Keen* v. *Delancy's Lessee*, (5 *Cranch*, 32.) arose upon the construction of a statute. And the Court say, " If the act then in question was for the first time to be construed. the opinion of the Court would be, that the deed was not properly proved, and, therefore, not legally re- corded. But in construing the statutes of a State, on which land titles depend, infinite mischief would ensue, should this Court observe a different rule from that which has been long established in the State." And whether these rules of land titles grow out of the statutes of a State, or principles of the common law adopted and applied to such titles, can make no difference. There is the same necessity and fit- ness in preserving uniformity of decisions in the one case as in the other. So, also, in the cases of *Polk's Lessee* v. *Wen- dal*, (9 *Cranch*, 98.) and *Thatcher* v. *Powell*, (6 *Wheat. Rep.* 127.) the construction of State statutes respecting real property was under consideration ; and the Court say, they will adopt, and be governed by, the State construction, when that is settled, and can be ascertained, especially where the title to lands is in question. But in the case of *Blight's Lessee* v. *Rochester*, (7 *Wheat. Rep.* 550.) which arose in Kentucky, the question was not upon the construction of any statute, but related to the doctrine of estoppel, between vendor and vendee ; and it was urged at the bar, that the question was settled by authority in Kentucky, and cases cited to establish the point. The authorities were exami- ned, and considered by the Court as not deciding the ques- tion ; but no intimation is given that they were inapplica- ble, because the question did not involve the construction of a statute. And the case of *Daly* v. *James*, (8 *Wheat. Rep.* 535.) which arose in Pennsylvania, is directly in point. The question there was upon the interpretation of a clause in a will, which had received a judicial construction by the Supreme Court of that State. And it was urged, as it has been here, that it was not one of those cases where the de- cisions of State Courts, on questions of local law, esta- blished rules of property which this Court could not dis- turb. But the Court said, they always listened with respect to the adjudications of the different States, when they ap- ply. And in a question of so much doubt. they were dis-

posed, upon this point, to acquiesce in the decision of the Supreme Court of that State, (*Smith* v. *Folwell,* 1 *Binn.* 546.) that the word " heirs" in the will is to be construed to be a word of limitation.

In that case this Court adopted a single decision of the State Court upon the question. But, in the case now under consideration, there have been two decisions in the two highest Courts of law in the State upon the identical question now in judgment, and which were in conformity to a settled course of adjudications for twenty years past.

After such a series of adjudications for such a length of time, in the State Courts, upon the very point now before us, and relating to a rule of landed property in that State, we do not feel ourselves at liberty to treat it as an open question.

Judgment affirmed, with costs.