OaeuthbRS, J.,
delivered the opinion of the court.
This bill was filed by the complainants, as heirs at law of Joseph B. Bates, deceased, against Thomas E. Bates, as executor, &c., for the construction of the will of Joseph Bates, Sr., deceased. The complainants contend for a large amount of property left by the said Joseph, to his son, Josejth B., who recently died intestate and without wife or children, now in the hands of defendant, Thomas F., who claims it as executory devi-see, under the will of their father, the said Joseph.
Joseph Bates made his will and died in the spring of 1849. After providing for his wife, the most of his estate was divided between his sons, Joseph B. and *571 Thomas F.; and he carefully provided that in the event of either dying' in the lifetime of the other, without issue, the property bequeathed to that one should go to the other. And it is upon the proper construction and effect of .this provision, that the present controversy rests.
The will, after describing the property, both real and personal, given to Joseph B., concludes in these words: “The above devises to my son, Joseph Benson Bates, are made to him and his right and lawful heirs forever. Nevertheless, if my son Joseph B. Bates, should die before my son Thomas F. Bates, and without issue, then the above bequest, together with the bequests made to him at the death or marriage of my wife, Polly, are to go to my son, Thomas F. Bates, and his right and lawful heirs forever.”
The troublesome and vexatious question arising in this case,- which has been so harrassing to the courts here and in England, for many hundred years, has now been put to rest by legislation, there and here, as to recent wills and deeds. But, as this will was made before our late act, the rights of the parties have to be settled by the old laws, and cannot be affected by the late enactment. -This is clearly an executory devise and bequest; a limitation of a fee simple interest in the property to Thomas F. Bates, if Joseph B. Bates, to whom the fee is first given, should die without issue, in the lifetime of Thomas. The contingency did happen, and the question is, whether the limitation is good according to the rules of law? It is insisted that it is defeated by the rule against perpetuities, which is, that an estate limited to one, on an indefinite failure of issue of another, is void for remoteness. This rule was *572 adopted upon sound considerations of policy, to unfetter estates for the promotion of commerce, and has been firmly maintained for centuries. But very great difficulty and perplexity have arisen in the application of this well settled principle. One test has been as well established as the rule. That is, that if the contingency upon which the estate is limited, must happen during the life or lives of persons in being at the time of the devise, and twenty-one years, and the ordinary time of gestation thereafter, then the limitation is good; ' but if it may not happen till after the time, it is bad, for remoteness, as tending to lock up estates in perpetuity. These rules are too familiar to require a reference to authorities to sustain them. But the books are crowded with controversies arising out of their ajsplication, and much apparent, if not real conflict, exists in the reported cases and elementary writers on 'the subject. It is not necessary, at this day, to enter into the discussion, as the subject has been exhausted even in our own cases, and nothing now remains to be said upon it. The diversity in the words used, indicative of intention, in cases which arise, is now the only source of trouble in this branch of the law.
A limitation of an estate upon the contingency of the first taker “dying without issue,” or “heirs,” has been uniformly held to be bad, as too remote,.because these words have an artificial legal meaning, and per se are taken to indicate an indefinite failure of issue. Although, in this ordinary acceptation, the sense in which they would be understood by all plain men, and are most generally used by unprofessional draftsmen of instruments, they are intended to indicate a *573 failure of issue, or children, at the death of the person referred to; yet, they must he taken by the court in their legal sense. So, if these words stand alone in a will they must be construed to mean an indefinite failure of issue. The meaning of the testator, however, with this exception, is a question of intention, and this fixed artificial sense of the words referred to, will be controlled by any clause or circumstance in the will, which goes to show that he meant, by the use of them, a definite failure of issue, or a failure of issue' at his death, or within a life, or lives in being and twenty-one years, and a fraction thereafter.
The courts having got into a difficulty under the influence of a just abhorrence of perpetuities by a forced construction of the words, “dying without issue,” have ever since been struggling to get out of it by indirection instead of boldly repudiating the error. But it is our duty to adhere to settled authorities, and declare the law as it is. Any superadded words, indicative of the intention of the testator to confine the meaning of the words “dying without issue,” to the time prescribed by the rule above stated for a. good limitation, will be sufficient to control the legal sense affixed to them, and save the limitation from destruction.
If the words, “living at the death,” be superadded, it is sufficient by all the authorities. So, any other words, in juxtaposition, or in the context, of the same import, or indicating the same intention, will have a similar effect. Such as, if he should die without “issue” living. Wm. Pells vs. Brown, Cro. Jac., 590. “Should either of my children die without issue, the portion to go to the surviving children.” Booker vs. Booker, 507. *574 “If Re should Rave issue at Ris death, I give the property to tRem, but if Re dies without issue, I give it to S. and J. Hooper.” Didlake vs. Hooper, 1 Ves. R., 194. “If either of my sons shordd depart this life without issue, Ris share, or part, shall go to the survivors.” 12 Wheaton, 153. There are many respectable authorities holding that the words, “ without leaving issue,” or the phrase, “ leaving no issue,” is sufficient to sustain the contingent estate; the word, “leaving” being held to fix the period of failure to he at the death of the first taker. But this is controverted, and held not to he the law in other cases.
Hi-. Fearne in the 2nd volume of his able treaties on remainders, p. 260, says: “ If the limitation rests solely upon the words, ‘dying without issue,’ it is too remote, and therefore void, and the whole rests in the first devisee, or legatee; hut that the signification of those words may he confined to a dying without issue then liming, by clause or circumstance in the will, which can indicate or imply such intention.” The same author says again, that “the courts will lay hold with avidity, of any circumstance, however slight, to support the limitations over of personal estates.”
This inclination is, perhaps, more palpable in the courts of this country. It is a little singular that so much talent and ingenuity as have been brought to bear upon the subject, have proved insufficient to unloose the cords with which the courts have bound themselves, but they have at last to be cut by the legislature.
This, however, only proves the strong disposition which has ever existed in the courts to preserve uniformity of decision, and give stability to the rules of *575 property. All we can do in tlie construction of wills made before our late act of assembly, is, to explore the face of the paper for some word, or idea, to relieve the phrase, “dying without issue,” of its technical sense, and if none can be found, to give it its legal effect, and let the limitation, or contingent estate fail.
In the will before us, there can be no serious difficulty under the rules and principles above explained. The contingency on which the property is to vest in Thomas E., must, of necessity, happen during a life then in being,.if at all. The clause creating the limitation, is, it will be remembered, “if the said Joseph B. Bates should die before my son Thomas F. Bates, and without issue,” then the property to go to him- and his heirs forever. This, then, was a good executory devise. But the limitation is protected under another, and the concluding claim , in the will. This is in substance, that, in the event of the death of the said Joseph B. before Thomas F., without issue, that all the property given to the former should go to William Winton, “and be held by him in trust for the said Thomas F., during his life, and for his support and maintainance, and at his death, then to the right and lawful heirs of him, the said Thomas F., forever.”
Here then is a trust to be performed by a person then in existence. Another question may here arise as to the extent of the estate of Thomas F.; whether it is absolutely by the operation of the rule in Shelly’s case, or for life only, with remainder to his children or heirs at his death.
This is not now properly before us, but as the estate of Thomas F. is equitable, and that of his heirs legal, *576 tlie rule may not operate, and make the law as declared by the chancellor correct, though not a question involved in tlie case before him.
On this question, however, we are not called upon now to give any opinion, and do not authoritatively settle it. The result, then, is, that the contingent limitation to Thomas F. is good, and consequently the complainants, as heirs and distributees of Joseph B.f have no interest in the property.
The decree of the chancellor is therefore affirmed, and the bill dismissed with costs.