## COX & SONS CO. v. CRANE IRON WORKS.

(Circuit Court of Appeals, Third Circuit. April 28, 1925.)

No. 3177.

1. Sales ⟨⟩ 177—Seller's remedies, on buyer's repudiation before time for performance, stated.

On buyer's repudiation of contract before time for performance, seller may accept breach as cancellation of contract, or it may stand on contract and decline to accept cancellation.

2. Sales ⟨⟩ 374—Rule as to remedy of seller, refusing to accept buyer's repudiation of contract before time for performance, stated.

Where seller refuses to accept buyer's repudiation before time for performance has arrived, and elects to stand on its contract rights, its duty is to do its part towards fulfilling contract, and it cannot sue for breach until time for performance has expired.

3. Sales ⟨⟩ 374—Seller, accepting buyer's repudiation before time for performance, may sue before expiration of contract.

Seller, accepting buyer's repudiation of contract before time for performance, as cancellation, may bring suit before expiration of contract.

4. Sales ⟨⟩ 384(2)—Measure of damages for buyer's anticipatory breach stated.

Seller's damages for buyer's repudiation of contract before time for performance is measured by damages which would have arisen at time for performance, less any abatement which may have afforded him means of mitigating his loss.

5. Sales ⟨⟩ 382—Evidence as to market prices at time of buyer's anticipatory breach should have been admitted on issue of damages.

In action for buyer's anticipatory breach of seller's contract to deliver pig iron in installments, evidence of market price at time of breach should have been admitted as one of elements which, in connection with contract prices at dates of delivery, buyer was entitled to have considered by jury on issue of seller's damages.

In error to the District Court of the United States for the District of New Jersey; Bodine and Rellstab, Judges.

Action by the Crane Iron Works against the Cox & Sons Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Walter H. Bacon, of Bridgeton, N. J., for plaintiff in error.

Frederic M. P. Pearse, of Newark, N. J. (Thomas Stokes, of Philadelphia, Pa., of counsel, and Daniel W. Applegate, of Newark, N. J., on the brief), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. The proofs in this case tended to show that on September 3, 1920, the Crane Iron Works, a corporate citizen of Pennsylvania, by written agreement sold to the Cox & Sons Company, a corporate citizen of New Jersey, 200 tons of pig iron at $51.25 per ton; deliveries, "about equally over first half of 1921;" payments, "cash 30 days."

On March 15, 1921, some 3½ months before the delivery period of the contract as noted above ended, the Crane Iron Works brought suit to recover damages for the defendants' breach of such contract. In support of its right to so sue before the expiration of the contract, the plaintiff, in its pleadings, averred that "on or about December 4, 1920, defendant for no good reason or cause whatever, repudiated all liability under the contract above mentioned, and notified plaintiff's selling agents, Rogers, Brown & Co., that its letter of December 3, 1920, was a formal notice of cancellation of the contract above referred to. Plaintiff claims a recovery for defendant's breach of the contract above referred to, and demands as damages the sum of $7,500." The defendant traversed this allegation, but as the case was tried on the theory of an anticipatory breach, and the verdict was in plaintiff's favor, we shall, for present purposes, assume that on December 4th the defendant breached the contract by anticipation, and by reason thereof there was conferred on such plaintiff the options, rights, and duties growing out of an anticipatory breach.

[1, 2] First, then, as to the options given the plaintiff. Deliveries under the contract would not begin for several weeks. In the first place, the seller had (a) the option of accepting the breach by the defendant, as a cancellation of the contract by it, and of placing plaintiff in the position of one whose contract has been wrongfully repudiated before the time of performance has arrived; or it had (b) the option of standing on the contract and declining to accept its tendered cancellation. If it followed the latter course, declined to accept the cancellation, and stood on the contract, its duty, of course, was to do its part toward the fulfillment of its part of the contract, which it was insisting was in force. In such case, it could stand on its contract rights, and at the termination of the contract demand and get reparation from the defendant on the basis of the plaintiff performing, and the defendant's not performing, at the times and manner the contract called for. It follows, of course, that if the seller stood on his con-

tract, was holding himself ready to perform, and insisting on the defendant also performing, it could not bring suit until the time for performance was ended. This course of standing on the contract, and awaiting its termination to bring suit, the seller in this case did not pursue, but, as averred in its statement, on December 4th it accepted the tendered cancellation of the defendant as a breach, anticipatory in theory, but final in fact.

[3] Under such facts, the leading case of Roehm v. Horst, 178 U. S. 1, 20 S. Ct. 780, 44 L. Ed. 953, controls the situation. In the first place, the seller could bring suit before the expiration of the contract, in that regard that case holding: "On the other hand, the promisee may, if he thinks proper, treat the repudiation of the other party as a wrongful putting an end to the contract, and may at once bring his action as on a breach of it."

This option to bring suit before the expiration of the contract the seller took in the present case, and the case cited thus states how damages shall be ascertained. In that regard, and as touching the rights of the seller, it holds, "In such action he would be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time"; but, as touching the duty of the seller, it adds to the above, "Subject, however, to abatement in respect of any circumstances which may have afforded him the means of mitigating his loss," adding also this, "While, by acting on such repudiation and the taking of timely measures, the promisee may, in many cases, avert, or at all events materially lessen, the injurious effects which would otherwise flow from the nonfulfillment of the contract." And that was the measure of damages Roehm v. Horst applied and there affirmed, viz.: "In this case plaintiff showed at what prices they could have made subcontracts for forward deliveries, according to the contracts in suit, and the difference between the prices fixed by the contract sued on and those was correctly allowed."

[4] Now, the subject of delivery in the present case was 200 tons of pig iron of certain chemical constituents, with deliveries spread over six months. The proofs showed the 200 tons had been made and were, when the contract was breached on December 4th, then ready for future delivery. While, as we have seen, the plaintiff in its original pleading claimed it was damaged to the extent of $7,500, yet in its amended statement it showed that, when the rule of Roehm v. Horst, namely, "Subject, however, to abate-

ment in respect of any circumstances which may have afforded him the means of mitigating his loss," was applied, the contract damages of $7,500 could have been reduced to $3,600. In that regard the plaintiff's amended statement averred:

"5a. At the time of the cancellation of the contract referred to and attached to the amended complaint, and when the iron ought to have been accepted according to its terms by the defendant, the market price for 200 tons of 'Crane' pig iron, of the grade mentioned in said contract, for shipments to be about equally over first half of 1921, was $33.25 per ton of 2,240 pounds, f. o. b. cars, furnace, Catasauqua, Pa., or $6,650, resulting in a direct loss to plaintiff of $3,600, being the difference between the contract price for the 200 tons at $51.25 per ton and the market price for the same grade and quantity of iron at $33.25 per ton, at the time of the cancellation of said contract and when the iron ought to have been accepted by the defendant."

But on the trial of the case the court refused to hear evidence of what the market price of this pig iron was at the time of the breach, which by the averments of the plaintiff, quoted above, would have reduced plaintiff's loss to $3,600, and confined the case to evidence of what the price of pig iron was at the several times of delivery provided by the contract. The result of this was plaintiff recovered damages of some $4,800, which was $1,200 in excess of what it should have received by its own showing. We would not be understood as holding that the sole measure of damages was the price at the date the anticipatory breach was accepted, but it was one of the elements which, in connection with the prices at the date of delivery specified in the contract, the defendant was entitled to prove, and have enter into the consideration of the jury in determining plaintiff's damages.

[5] Indeed, the court rightly announced the law when it told the jury: "You have heard the evidence as to what the market price was during the first half of 1921, and from that you would determine what was the value of this iron which Cox & Sons would not take, and you would also from the contract figure out what was the contract price for this iron, and the difference would be the measure of damages, unless you should find that there was something that the Crane Iron Works might have done to lessen or minimize the damages." Its error consisted in having previously ruled out the offer of the defendant's evidence of the element of the

price at the time of the breach as proof "that there was something the Crane Iron Works might have done to lessen or minimize the damages." Its refusal to receive evidence of the market price at the time the anticipatory breach was accepted by the seller, and what the seller could have done to minimize the loss, was therefore error, for which the cause must be reversed and the cause remanded for further procedure.