## CRANE IRON WORKS v. COX & SONS CO.

Circuit Court of Appeals, Third Circuit.
September 26, 1928.

No. 3775.

See, also, 5 F.(2d) 314.

Frederic M. P. Pearse, of Newark, N. J. (Daniel W. Applegate, of Newark, N. J., on the brief), for plaintiff in error.

Walter H. Bacon, of Bridgeton, N. J. (Harry Heher, of Trenton, N. J., of counsel), for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This case was brought here on writ of error by plaintiff on the ground of the inadequacy of the verdict, resulting from the erroneous admission of evidence and charge to the jury.

The Crane Iron Works, plaintiff, a manufacturer of pig iron, entered into a contract with the defendant on September 3, 1920, to sell 200 tons of pig iron at $51.25 per ton. Deliveries were to be made "about equally over the first half of 1921." On November 16, 1920, defendant wrote to Rogers, Brown & Co., factors of the plaintiff, that, "owing to unforeseen business conditions, we wish to cancel this contract, which as we take it injures no one, inasmuch as it is not in effect until the first of 1921." Rogers, Brown & Co. submitted the letter to plaintiff, and on November 22, 1920, wrote defendant that:

"The Crane furnaces state that this contract was entered into in good faith by them at the time it was taken, and their practice is to live up to all their deals, regardless of price or condition, and, further, in order to do this, they are compelled, when entering orders for pig iron, to protect themselves on raw material, and, inasmuch as they have covered themselves in this respect to take care of your contract, it is out of the question for them to consider cancellation."

The defendant replied on December 3, 1920, stating its intention to cancel the contract, and in conclusion said: "Please consider this and our letter of November 16th, as a formal notice of the cancellation of contract dated September 3d." In reply on December 7, 1920, the plaintiff said that the contract "was entered into in good faith and is expected to be shipped by the furnace company, whether prices went up or down, and they maintain that contracts should always be respected, and they, therefore, intend to ship the iron in accordance with the agreement made." On December 15, 1920, defendant wrote: "We can only state that, if they want to start something, let them begin shipping."

The plaintiff referred the matter to its attorneys, who on December 28, 1920, wrote to defendant, asking it to refer them to its attorney, with instructions to him to accept service of a writ. This ended the negotiations between the parties, and plaintiff brought this suit against defendant on March 15, 1921, for cancellation of the contract, and demanded as damages "the difference between the contract price for the 200 tons at $51.25 per ton, and the average market price for the same grade and quantity of iron in shipments about equally over the first half of 1921."

The case was tried to the court and jury, which rendered a verdict for $1,200 damages, with interest from July, 1921. The judgment entered on the verdict was brought here on plaintiff's writ of error because of the inadequacy of the verdict. This resulted, plaintiff contends, from the admission of irrelevant evidence and the erroneous charge of the court.

This was the second trial of this case. The judgment was reversed in the first trial, because the court refused to admit testimony showing the price of ore at the time the defendant sought to cancel the contract on November 16, 1920, and on the subsequent dates when it reiterated its determination to cancel. Cox & Sons Co. v. Crane Iron Works (C. C. A.) 5 F.(2d) 314. On the retrial the court admitted evidence showing the prices on November 16 and December 3, 1920, the dates of the two letters which defendant said constituted "formal notice of the cancellation of the contract."

Plaintiff says that it was error to admit this testimony over objection, because the measure of damages is fixed by section 64 (3) of the Uniform Sales of Goods Act, which provides that:

"Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances, showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept." 4 Comp. St. N. J. 1910, p. 4662.

It further says "that the only relevant testimony with respect to market prices was the market prices for the months of January, February, March, April, May, and June of 1927, being the dates on which the iron in question was to have been delivered and should have been accepted."

■ Counsel relies upon the case of United States v. Burton Coal Co., 273 U. S. 337, 47 S. Ct. 351, 71 L. Ed. 670, and says that it "sets at rest any question as to the measure of damage." In administering New Jersey Law, the federal court, with exceptions not here applicable, follows the statutes and rules of law of New Jersey as declared by her highest courts. Jackson v. Chew, 12 Wheat. 153, 167, 6 L. Ed. 583; Bucher v. Cheshire R. R. Co., 125 U. S. 555, 8 S. Ct. 974, 31 L. Ed. 795; De Vaughn v. Hutchinson, 165 U. S. 566, 17 S. Ct. 461, 41 L. Ed. 827; Madisonville Traction Co. v. St. Bernard Mining Co., 196 U. S. 239, 25 S. Ct. 251, 49 L. Ed. 462; Kuhn v. Fairmont Coal Co., 215 U. S. 349, 360, 30 S. Ct. 140, 54 L. Ed. 228. But the question here is whether or not the statute and cases cited are applicable, and so controlling. Defendant says that they are not, because, when it canceled the contract on a falling market, it was the duty of the plaintiff to use reasonable diligence to mitigate its damages, and, if it had done so, the damages it suffered would not have been in excess of those found by the jury. When this case was here before [Cox & Sons Co. v. Crane Iron Works, 5 F.(2d) 314] we said:

"Indeed, the court rightly announced the law when it told the jury: 'You have heard the evidence as to what the market price was during the first half of 1921, and from that you would determine what was the value of this iron which Cox & Sons would not take, and you would also from the contract figure out what was the contract price for this iron, and the difference would be the measure of damages, unless you should find that there was something that the Crane Iron Works might have done to lessen or minimize the damages.' Its error consisted in having previously ruled out the offer of the defendant's evidence of the element of the price at the time of the breach as proof 'that there was something the Crane Iron Works might have done to lessen or minimize the damages.' Its refusal to receive evidence of the market price at the time the anticipatory breach was accepted by the seller, and what the seller could have done to minimize the loss, was therefore error."

■ The ultimate question before us, therefore, is whether or not the Uniform Sales of Goods Act of New Jersey abrogates the rule of law requiring the injured party on breach of a contract to use reasonable diligence in mitigating his damages, and, if it does not, is the instant case one in which that rule should have been applied? The act does not expressly repeal the rule of law as to the mitigation of damages, nor is the act inconsistent with it, and so it is not repealed by implication. At the argument, counsel for plaintiff admitted that the Uniform Sales of Goods Act does not repeal this rule of law. It is still the duty of an injured party to use due diligence to mitigate his damages on the breach of a contract.

■ Was the plaintiff required to use due diligence to mitigate its damages in this case? The price of pig iron was constantly falling, with no prospect or indication of a rising market. The plaintiff knew, from the contents of the defendant's letters, that it persisted in its determination not to perform the contract and had definitely canceled it. In our former opinion, we said of the plaintiff: "It accepted the tendered cancellation of the defendant as a breach, anticipatory in theory, but final in fact." The testimony shows that plaintiff was constantly manufacturing and selling pig iron of the kind and quality covered by the contract. On November 16 it sold and delivered 90.04 tons, and on December 15, 234.14 tons, two of the dates defendant wrote, stating that it would not carry out the contract. For the 30 days from November 16 to December 15, plaintiff manufactured a daily average of 214.13 tons. The evidence does not show that plaintiff appropriated any particular iron to this contract.

The learned trial judge charged the jury that the measure of damages was the difference between the contract price and the market price at the time when and the place where deliveries should have been made, unless it should find that there was something that the plaintiff might have done to lessen or minimize the damages, such as making forward contracts or disposing of the goods. The defendant submitted testimony showing that, if the plaintiff had resold the iron to others on November 16, it would have lost

$600, and, if it had sold on December 3, 1920, it would have lost approximately $1,800.

The price of pig iron began to drop soon after the contract was made, from the contract price of $51.25 per ton to $23.96 per ton in June, the end of the delivery period. The jury evidently found that, in view of the cancellation of the contract by the defendant, the plaintiff should have resold the iron when its damages were $1,200, some time between November 16 and December 3, 1920. We think that the question of the mitigation of damages, under the facts in this case, was for the jury, and there was evidence to justify its conclusion. The question of the mitigation of damages was not raised, and so was not before the court in the case of United States v. Burton Coal Co., supra. It has no bearing upon the question upon which this case depends. It merely restates the law as declared in the New Jersey Sales of Goods Act.

We do not find that the learned District Judge erred in the admission of evidence or in his charge to the jury, and the judgment is affirmed.