UNITED STATES TRUST CO. v. GORDON et al.

In re DOVEY COAL CO.

(Circuit Court of Appeals, Sixth Circuit. October 9, 1914.)

No. 2421.

BANKRUPTCY (§ 310*)—CORPORATION—PROOF OF MORTGAGE BONDS—RIGHTS OF MORTGAGE TRUSTEE.

A bankrupt corporation had issued bonds secured by a mortgage, which provided that in case of default for six months the mortgage trustee might on its own motion, or on request of bondholders, proceed by suit to enforce its provisions, or it might decline to do so, in which event only a bondholder might proceed in his own name. At the time of the bankruptcy there had been default for more than six months, but the trustee had instituted no suit, nor had there been any request therefor. Two men, who owned all of the bonds severally, proved their claims as secured creditors, and the same were allowed. Afterwards the mortgage trustee filed a claim for the entire mortgage debt, and asked that the property be sold by the trustee in bankruptcy, which was done on his own petition, without objection. *Held*, that the proceeding was not such an enforcement of security as was committed by the mortgage solely to the trustee, and that, the debts having been proved and allowed to the real owners, it was not error for the bankruptcy court to refuse to recognize any right in the mortgage trustee and to reject its claim.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 501–507; Dec. Dig. § 310.*]

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

In the matter of the Dovey Coal Company, bankrupt; W. L. Gordon, Jr., trustee. The United States Trust Company, as trustee, appeals from an order rejecting its claim. Affirmed.

P. N. Booth, of Louisville, Ky., for appellant.

Before WARRINGTON and KNAPPEN, Circuit Judges, and HOLLISTER, District Judge.

KNAPPEN, Circuit Judge. The Dovey Coal Company, a corporation, on May 1, 1905, issued a series of negotiable bonds aggregating $50,000, securing the same by deed of trust in nature of first mortgage on all its property and franchises to the United States Trust Company, of Louisville, Ky., as trustee. On October 30, 1905, and November 29, 1905, respectively, the Coal Company gave the Trust Company further mortgages securing the same bond issue. On July 1, 1910, the Coal Company issued a further series of negotiable bonds amounting to $40,-000, securing the same by a second mortgage trust deed upon its assets to the same trust company as trustee. Each mortgage contained sinking fund provisions. All the bonds of both series were held in severalty by two creditors, Lam and Eades (the bonds being in their sole and actual possession), except $5,500 of first mortgage bonds held by the Trust Company, in connection with $147.50 cash, under the sinking fund provision of the first mortgage. Each mortgage contained a clause providing for immediate maturity of the bonds in case of six months' default in making interest or sinking fund payments, or in the performance of other conditions, and for the effecting of such maturity through

a written demand upon the trustee by the holders of 10 per cent. in amount of the bonds, and the trustee's notification to the Coal Company of such maturity. Subdivision 2 of the default article is printed in the margin.[1]

In case of "enforcement of the terms of this indenture," the proceeds of sale, as well as the sinking fund, were to be devoted, first, to the payment of costs; second, to the trustee's expenses, counsel fees, and compensation; and, third, to the equal pro rata benefit of bond and coupon holders.

The Coal Company having become bankrupt after default in payment of interest Lam and Eades, on November 25, 1911, made proof of their respective claims as bondholders under the deeds of trust, both claims being allowed on either November 25 or December 5, 1911. After this allowance, and on December 5, 1911, the Trust Company, as trustee, filed proof of claim on account of the entire of both bond issues, claiming lien for the full amount of both, also alleging default with respect to three semiannual sinking fund payments of $500 each under the first mortgage and of two such payments of the same amount under the second mortgage, the proof of claim stating that the Trust Company would "hereinafter plead further as to the enforcement of its rights as trustee under the aforesaid deeds of trust and mortgages and as to the sale of property hereinbefore referred to on which it holds liens as trustee."

On March 12, 1912, the petition of Lam and Eades for sale of the mortgaged property came on for hearing before the referee. The Trust Company, as trustee, objected (so far as here material) that the sale could be made only on the petition of the trustee in bankruptcy or after he had been given opportunity to make the same, and because of the power conferred on the mortgage trustee by the default provisions of both mortgages, the Trust Company expressing a desire to "bid on the property to be sold and to use the value of its lien in part payment of the purchase price." Without waiving these objections, the Trust Company asked that the trustee in bankruptcy be made to elect whether to sell the mortgaged property or the bankrupt's interest therein, and to show cause why he should not be required to file a petition for such sale. That officer thereupon elected to sell free of liens, and, by permission of the court, and without objection thereto, joined in and adopted the allegations of the petition of Lam and Eades, filing, however,

---

[1] "In case default shall be made by the Coal Company as set forth in the preceding section, and shall continue for the time therein prescribed, the trustee may, on its own motion or upon being requested by the holders of 10 per cent. of the then outstanding bonds and upon being indemnified by such holders against all costs, including expenses and counsel fees, shall proceed to enforce the provisions of this indenture by filing suit in its own name in some court having jurisdiction in the premises. The trustee may, however, upon such demand being so made upon it, decline to proceed; in which event, and in that event only, the holder or holders of any of the bonds secured hereby may proceed in his or their own name, and in any such proceeding taken by the trustee or by the holders of bonds a receiver may be at once appointed, and all tolls, rents, issues, incomes and profits shall pass to such receiver, as well those then accrued as those thereafter accruing, and such receiver shall take into his possession all of the real and personal property then under lien for the security of the bonds or covenants herein contained."

a new petition. The referee held that Lam and Eades had the right to claim the benefit of the mortgage security and that the mortgage default clause had no application to existing conditions, expunged the claims of the mortgage trustee as creditor (its claim having never been allowed), and granted the petition of the trustee in bankruptcy for sale of the mortgaged property. The court, on petition for review affirmed the referee's order, reserving to the Trust Company the right to present further claims for whatever was owing it when its proof of debt below was presented, for expenses and compensation in connection with and in the discharge of its duties as mortgage trustee.[2]

The Trust Company invokes the rule that individual bondholders secured by mortgage containing foreclosure-default provisions such as exist here cannot take proceedings to enforce the security except in case of the mortgage trustee's disqualification or refusal to act. This rule, as applied to the usual case of enforcement of security is well settled. 3 Cook on Corporations (6th Ed.) § 826; Electric Co. v. Electric Co. (C. C. A., 9th Cir.) 87 Fed. 590, 31 C. C. A. 118. The question is whether the rule is of controlling application under the facts presented here. It will be noted that, although default under both mortgages had existed for more than six months before bankruptcy occurred, the mortgage trustee has never attempted to foreclose, nor has it been asked to take such action, either before or after bankruptcy. Had foreclosure been pending when bankruptcy intervened, the foreclosure would not ordinarily be interfered with by the bankruptcy court. In re Rohrer (C. C. A., 6th Cir.) 177 Fed. 381, 383, 100 C. C. A. 613, and cases there cited. Had the bankruptcy court been applied to for leave to institute foreclosure proceedings, that court would have had power, in its discretion, to grant it. 1 Loveland on Bankruptcy (4th Ed.) § 57, p. 171. But such leave was not requested; the only enforcement of security actually asked for by the mortgage trustee was a sale by the trustee in bankruptcy. The substantial grievance of the mortgage trustee is that it was not allowed the status of creditor in recovery upon the bonds, and thus the receipt through the bankruptcy proceedings of the proceeds of the sale of the mortgaged property. Of course, the practical value to the mortgage trustee of the recognition asked lies in the opportunity thereby to recover commissions on the amounts received by it from the bankruptcy trustee and disbursed by the mortgage trustee to the bondholders. This is a valuable right, and should be protected under applicable situation.

But we think the court below reached the correct conclusion upon the case before it. The bondholders were clearly creditors of the bankrupt, and under section 57 of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 560 [U. S. Comp. St. 1901, p. 3443]) had the right to prove their claims as such, unless the mortgage has given the trustee a superior right. The mere fact that the trustee holds the legal title to the security, does not necessarily make it, in equity, a creditor with respect to the debt itself. The mortgage trustee's proof of claim alleges that the consideration of the mortgage debt is "moneys loaned to

---

[2] This reservation is found in the court's opinion, which contains the only order on review printed in the record.

said Dovey Coal Company by the owners and holders of the bonds referred to in the mortgages or deeds of trust hereinafter mentioned or by their assignors," and the record contains the concession in argument below that the Trust Company "as trustee or otherwise has no pecuniary interest or ownership in said bonds or any of them." It should go without saying that the bondholders are alone interested in the sinking fund. When the Trust Company filed its claim as creditor the bondholders had already been awarded the status of creditors, and no review of this action appears to have been attempted. As said by Judge Evans, in deciding the case below, the trustee "assumed to act for the bondholders after they had acted for themselves, and after their claims had been allowed in an adequate manner."

The case is scarcely within the strict letter of the mortgage, for the trustee has neither been asked, nor has it sought, to "enforce the provisions" of the mortgage "by filing suit in its own name in some court having jurisdiction in the premises." In the absence of direct authority on the subject, we are not satisfied to hold that the petition to have the mortgaged property sold by the trustee in bankruptcy free of liens and the proceeds applied upon the mortgage debt is such an enforcement of security as the default provisions contemplate as inflexibly committed solely to the mortgage trustee. Nor is the case within the spirit of the provision invoked, because there is no longer occasion for the exercise of the authority in question, since bankruptcy has rendered receivership to prove claims thereunder unnecessary; all the bondholders (there being but two) are before the court, and there is thus no possible conflict of interest as between themselves or as between them and the mortgage trustee, except possibly as respects the fixing of fees for past services. Any controversy of this nature the bankruptcy court has ample power to adjust.

In these circumstances, the passing of the proceeds of sale from the trustee in bankruptcy to the two bondholders through the mortgage trustee, as a mere conduit, would be an unnecessary and expensive formality.

The order of the District Court is affirmed, with costs.