## In re BATTLE ISLAND PAPER CO.

### (District Court, N. D. New York. August 6, 1919.)

BANKRUPTCY ⨂⟿323—PROVABLE DEBTS—SECURED CREDITOR.

A creditor of a bankrupt corporation holding its notes secured by its mortgage bonds as collateral, after realizing from the mortgaged property, cannot prove against the general estate both the balance due on the notes and the balance due on the bonds, but is entitled to dividends only on the amount of the actual indebtedness to him.

In Bankruptcy. In the matter of Battle Island Paper Company, bankrupt. On application of the National Park Bank of the City of New York for resettlement of order of distribution. Denied.

This is an application by the National Park Bank of the City of New York for a resettlement of the order of this court providing for the distribution and payment over of the balance of the estate remaining for distribution. The question now raised is new in the case, and was not suggested or presented by any one at the time the order of distribution referred to was made.

Louis F. Doyle, of New York City (Nottingham, Nottingham & Edgcomb, of Syracuse, N. Y., of counsel), for National Park Bank.

Chas. E. Hotchkiss, of New York City, for Columbia Trust Co.

Gannon, Spencer & Michell, of Syracuse, N. Y., for trustees.

RAY, District Judge. Prior to the bankruptcy of the Battle Island Paper Company it became indebted to the National Park Bank in the sum of $25,000, evidenced by three notes of said company for $10,000, $10,000, and $5,000, respectively, and in the further sum of $5,380.59, representing an overdraft on the bank made by said company. For the overdraft the bank held and holds no security, but as security for the payment of the notes there was pledged with and to the bank 35 first mortgage bonds of the Battle Island Paper Company, of the par value of $1,000 each. There is no question of the right of the company to pledge the said bonds as collateral security for the payment of such notes. These bonds were secured by a mortgage on the real estate of said company.

On petition of the trustees in bankruptcy this court enjoined certain creditors of the bankrupt including the National Park Bank from selling or disposing of such bonds. Thereafter, on December 3, 1914, on petition of said National Park Bank this court made an order which provided:

"Ordered, that said injunction order heretofore granted be, and the same hereby is, so far vacated and set aside as to allow and permit the said petitioner to proceed under its contract, by which said collateral was pledged, and under which the same is held, and enforce the same and reduce the said collateral to ownership, unless purchased by outside parties on condition that the petitioner will credit on its claim against the bankrupt estate at least 25 per cent. of the par value of said collateral, and on which further condition that it execute and deliver to the trustees in bankruptcy an agreement that the purchasers of such collateral, consisting of bonds secured by said

⨂⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

mortgage, will, when such bonds are reduced to money, credit on their claims against the bankrupt estate such sum or sums as it realizes thereon, over and above the said 25 per cent. to be credited as above stated, after deducting from the sum or sums realized from said collateral all expenses incurred by them in foreclosing the mortgage on the Canadian lands, and in protecting and preserving the collateral or the title to the lands so mortgaged, with interest on such sums so expended up to the time said petitioner shall have realized on such collateral."

Thereafter pursuant to orders of this court the trustees in bankruptcy paid over to the Columbia Trust Company, as trustee under the mortgage given to secure the payment of said bonds, the proceeds of the mortgaged property which had been duly sold, and the Columbia Trust Company made distribution thereof to the parties entitled according to their holding of bonds, and paid to the National Park Bank its pro rata share thereof on the said 35 bonds so held by it as collateral security for said notes, and which 35 bonds, after the vacation of said injunction order, had been offered for sale by said bank pursuant to the power of sale contained in said notes at public auction on due notice, and sold December 16, 1914. On such sale the National Park Bank purchased such bonds for the sum of $8,750, 25 per cent. of their par value; that being the only bid.

The National Park Bank had filed its claim for $30,380.59, of which $5,380.59 was on the overdraft and the balance, or $25,000, on such notes.

After the payment on such bonds from the proceeds of the mortgaged property made by the Columbia Trust Company, the National Park Bank executed and delivered to the trustees in bankruptcy a duly acknowledged consent in the words and figures following:

"United States District Court, Northern District of New York.

"In the Matter of Battle Island Paper Company, Bankrupt.

"In Bankruptcy. Nos. 5667 and 5675.

"To United States District Court for the Northern District of New York and to Honorable George W. Ray, United States District Judge:

"The undersigned, National Park Bank of New York City, hereby acknowledges the receipt from the Columbia Trust Company, as trustee, of the sum of $9,790.55 on account of the bonds held by the undersigned as collateral security for the payment of an indebtedness of the Battle Island Paper Company for which the undersigned presented and filed a claim in the above-entitled matter for the sum of $30,380.59, and the undersigned hereby consents that said sum of $9,790.55 be deducted from said claim of $30,380.59, and that said claim be reduced to the sum of $20,590.04 and allowed only for such reduced sum.

"In witness whereof the National Park Bank has hereunto caused its corporate name to be subscribed hereto and its corporate seal to be affixed this 18th day of March, 1919.          The National Park Bank of New York,

"[Seal.]                              By M. H. Ewer, Vice President."

Thereupon, on petition showing the facts, this court, April 3, 1919, made an order as follows:

"Ordered as follows:

"1. It appearing by said petition and the consent of the National Park Bank thereto annexed that said bank has realized the sum of $9,790.55 from the bonds of the Battle Island Paper Company, of the par value of $35,000,

held by said bank as collateral security to the indebtedness of said Battle Island Paper Company, for which said bank filed a proof of debt herein in the sum of $30,380.59, it is hereby

"Ordered, that the sum so realized be deducted from the amount of the claim of said bank as filed herein, and that by reason thereof said claim be, and hereby is, reduced to the sum of $20,590.04."

Thereafter the Columbia Trust Company, as trustee under said mortgage to secure the payment of such bonds of the Battle Island Paper Company, presented a claim against the bankrupt estate of the said Battle Island Company, based on the deficiency arising on the bonds after applying to the payment of same the proceeds of all the mortgaged property, and the claim was allowed at the sum of $359,-291.16. This claim for deficiency included the deficiency arising on the said 35 bonds so held by the said National Park Bank as collateral security, and which had been sold as stated and purchased by the National Park Bank. June 6, 1919, this court made an order for the settlement of the accounts, etc., of the trustees in bankruptcy and for a final dividend and distribution of the estate of said Battle Island Paper Company remaining for distribution, and recited the allowance of the said claim of the Columbia Trust Company for deficiency on such bonds, and provided that all dividends declared and paid by the trustees in bankruptcy on such allowed claims be paid directly to the holders of the bonds secured by the mortgage or deed of trust. This was done by consent and to avoid the necessity of payment of such dividend, first, to the Columbia Trust Company, and, second, a distribution by it to the several bondholders.

This order of distribution also further provided, as to the claim of the National Park Bank, as follows:

"It appearing that the National Park Bank of New York heretofore filed a claim herein in the amount of $30,380.59, $5,380.59 thereof being for an unsecured indebtedness, and $25,000 thereof being for an indebtedness on promissory notes to secure the payment of which said bank holds $35,000 par value of the bonds of the Battle Island Paper Company secured by the mortgage or deed of trust made and executed to the Columbia Trust Company, as trustee, and that since filing the said claim payments in the amount of $9,790.55 have been made on said bonds, thereby reducing the total claim of said bank to $20,590.04: Now it is hereby

"Ordered that as to $15,209.75 of said claim as reduced, being the balance remaining unpaid on said promissory notes after applying thereon the amount paid on the said bonds, the said bank shall receive its pro rata payment on said bonds under the distribution as herein provided upon the claim for deficiency filed by, and allowed to, the Columbia Trust Company, as trustee, in lieu of the payment of dividends directly to said bank on that amount of the principal of its said claim, and that there shall be allowed and be paid to said bank the first and final dividends upon the balance of its claim being the unsecured part thereof, to wit, on the sum of $5,380.59."

Other creditors holding such bonds of the Battle Island Paper Company as collateral security to indebtedness of the bankrupt did not file claims against the estate, and thereby elected, in effect, to rely on the bonds as security. Under the order of distribution they will receive their pro rata share on such bonds out of the amount distributed arising on the claim for deficiency allowed to the Columbia

Trust Company as trustee, but ordered paid direct to the bondholders to avoid circuity of payment.

The National Park Bank, having received its pro rata share of the proceeds of the sale of the real estate and property covered by the trust mortgage, and having become the purchaser of the said 35 bonds so held by it as collateral to said notes in the manner and under the circumstances mentioned, and having so credited the amount of its bid for such bonds on its claim as stated, now claims and insists that it is entitled, and that this order of distribution should provide, that it be paid first its pro rata share of the amount to be paid bondholders from the general estate arising on the claim of the Columbia Trust Company for such deficiency on such bonds and allowed to it on account thereof, but, as stated, directed paid directly to the bondholders, and secondly, and in addition, its pro rata share of the general estate on the amount of its claim, as reduced by such payment on account of the deficiency claim. The trustees in bankruptcy and the Columbia Trust Company, the trustee under the mortgage given to secure such bonds, contest this claim.

The mortgaged property having been sold, and its proceeds applied to the payment of the bonds as far as it would go, and the bonds or mortgage containing a promise of the Battle Island Company to pay the entire amount of the bonds, the holders of such bonds through the trustee were entitled to prove and have allowed a claim for the deficiency against the general estate. This claim, as stated, was presented and allowed, and directed paid from the general estate. The claim on the notes was a promise of the Battle Island Paper Company to pay them or the amount represented thereby. The promise to pay the bonds was another obligation of the company to pay the amount represented thereby, and the dividend declared thereon, when paid, satisfies that promise, to whomsoever paid, if paid to the holder of the bonds. There can be no doubt that the National Park Bank, as owner and holder of these bonds, is entitled to its pro rata share of that dividend. It is entitled thereto by virtue of its ownership of the bonds on which the amount received on the claim for a deficiency is to be applied.

The National Park Bank held the promissory notes of the Battle Island Paper Company for $25,000, and it received from that company its bonds, issued by it and payable by it; that is, its additional promise to pay the several amounts represented by the bonds, not for a new and a different and an independent consideration, but as collateral security for the payment of the same original indebtedness represented by the notes. This second promise was secured by a mortgage on real estate of the promisor, but when that was sold, and its proceeds applied as agreed in reduction of the bonds, nothing remained but the promise of the debtor.

Prior to the bankruptcy, and prior to the sale of the bonds held by the bank as collateral to the notes, the bank held a secured claim, as the bonds were secured; but when the mortgaged property was sold, and its proceeds applied to the payment of the bonds so far as such proceeds should go, the security was exhausted, unless it be held

that one promise of a debtor to pay, secured by collateral consisting of another promise of the same debtor to pay certain sums, and which latter promise is secured by a mortgage on the debtor's property, remains a secured claim after the mortgaged property has been applied on the collateral promise, and that the collateral promise remains a security to the extent that one dividend, in case of bankruptcy, may be paid from the general estate on the promise contained in the notes, and another dividend may be paid from the general estate on the collateral and additional promise contained in the bonds. It seems to me that this is contrary to the authorities. In First National Bank v. Eason (C. C. A. 5th Circuit) 149 Fed. 204, 79 C. C. A. 162, it is held:

"A creditor holding the note of a bankrupt, and, as collateral security therefor, another note on which the bankrupt is also liable, is not entitled to prove his claim against the estate in bankruptcy for both, but only for the amount of the actual indebtedness to him."

In John Matthews, Inc., v. Knickerbocker Trust Co. (C. C. A. 2d Circuit) 192 Fed. 557, 558, 113 C. C. A. 29, 30, the court with other things said:

"The real debt which the bankrupt corporation owed the petitioner was evidenced by the note, and nothing was added to it by giving as collateral another promise to pay. Any rule which would permit the proof of two notes for one indebtedness would permit the proof of a dozen, and would substitute, for pro rata distribution among real creditors, distribution in accordance with the ability of a bankrupt to make manifold obligations for single debts. It is a safe and equitable proposition that, in the distribution of bankrupt estates, paper obligations issued without consideration as security for an indebtedness shall not be permitted to increase it."

In the case at bar the security has been exhausted and applied on the debt, and the mere promise contained in the collateral should not be permitted to increase the charge on the general assets of the bankrupt corporation.

The fact that the bank became the purchaser of the bonds held as collateral when allowed to realize on its collateral should not in any way change the relation of the parties or increase the charge on the general assets of the bankrupt corporation. The value of the security was ascertained and measured by this sale, and that value so ascertained has been duly credited on the claim.

In addition, the Columbia Trust Company, the trustee under the mortgage, has proved and been allowed a claim on the promise to pay the bonds contained therein, and which claim in its favor was of course for the benefit of the holders of the bonds of which the National Park Bank is one. That dividend is to satisfy and pay the demand created by the promise of the bankrupt corporation contained in the bonds. In due course it would be paid to the Columbia Trust Company and by it distributed to the holders of the bonds, but for convenience and to avoid circuity and by consent it is apportioned by the order of distribution and to be paid directly to the holders of the bonds. This will satisfy that promise. It is paid from the general assets of the estate, and diminishes such assets that much. To de-

clare and pay another dividend from the general assets of the estate on the promise contained in the notes will be to allow and pay a dividend on each of two promises to pay held by the National Park Bank, both of which are held as security for the payment of the same debt, $25,000, evidenced by the notes above mentioned.

This, of course, raises the question whether it was proper to decree payment of a dividend on the promise contained in the notes or on that contained in the bonds. The main and original debt and promise was that contained in the notes representing the debt of $25,000. The promise contained in the bonds is a collateral promise given as a collateral security for the performance of the other. But I do not see that the National Park Bank has reason to complain. Its claim on the overdraft is to be paid its percentage from the general assets, and the order so provides. The claim on the notes was $25,000, and this by application of the proceeds of the bonds has been reduced to about $15,000. The par value of the bonds pledged as collateral was $35,000, and on this amount, with the other bonds of the same issue held by others, the Columbia Trust Company proved its claim, which was allowed, and the proportion going to the National Park Bank is greater than the amount it would receive on a dividend based on the balance of the claim on the notes. Under the order as made the National Park Bank gets all it is entitled to.

On the general proposition that a dividend in this case cannot be allowed from the general assets on both promises, it may be well to cite the following cases, which are in point on the general proposition while the facts are somewhat dissimilar: Matthews v. Knickerbocker Trust Co., 192 Fed. 557, 113 C. C. A. 29 (C. C. A. 2d Circuit); In re Matthews (D. C. N. Y.) 188 Fed. 445; In re Waterloo Organ Co., 159 Fed. 426, 86 C. C. A. 406 (C. C. A. 2d Circuit); Union Cattle Co. v. International Trust Co., 149 Mass. 492, 21 N. E. 962; Hitner v. Diamond Steel Co. (C. C. Del.) 176 Fed. 384, 392–403; Knickerbocker Trust Co. v. Penacook Mfg. Co. (C. C.) 100 Fed. 814; In re Waddell-Entz Co., 67 Conn. 324, 35 Atl. 257; Tyner v. Stoops, 11 Ind. 22, 71 Am. Dec. 341; Steinharter v. Covington City Nat. Bank, 10 Ky. Law Rep. 359; Atlantic F. & M. Ins. Co. v. Boies, 13 N. Y. Super. Ct. 583; International Trust Co. v. Union Cattle Co., 3 Wyo. 803, 31 Pac. 408, 19 L. R. A. 640.

I think the application to resettle the order should be denied, and it will be denied, unless the bank can show that it would receive more from the general assets by having distribution based on the amount of the notes instead of on the amount of the bonds, par value, pledged as collateral.