In re **INTERNATIONAL MATCH CORPORATION.**

District Court, S. D. New York.
Sept. 7, 1932.

See, also (D. C.) 3 F. Supp. 443; (D. C.) 59 F.(2d) 1012.

Taylor, Blanc, Capron & Marsh, of New York City (John V. Marsh and B. A. Brand, both of New York City, of counsel), for City Bank Farmers' Trust Co.

David L. Podell, of New York City, for former Redfield Protective Committee, Independent Protective Committee for Debenture Holders.

Cadwalader, Wickersham & Taft, of New York City (W. L. Kitchel, of New York City, of counsel), for Debenture Holders' Protective Committee.

Rosenberg, Goldmark & Colin, of New York City (James N. Rosenberg and George K. Hourwich, both of New York City, of counsel), for Irving Trust Co., trustee in bankruptcy.

MACK, Circuit Judge.

The City Bank Farmers' Trust Company, hereinafter referred to as trustee, filed its claims for $98,000,000, principal and interest, of which nearly $96,500,000 was principal, alleged to be due to it as trustee under two substantially identical trust agreements executed respectively in 1927 and 1931. Such parts thereof as are material to the consideration of the questions before me are noted in the margin.[1]

In each of the trust agreements, bankrupt covenanted with trustee "for the equal and proportionate benefit of the" debenture holders and registered owners. The debentures referred to are bankrupt's debentures payable to bearer or to the registered owner thereof, in an amount equal to the amount agreed to be paid, under certain circumstances, to the trustee, as such trustee; by neither agreement, however, was any property conveyed to the trustee, as security for the debentures.

In each of the claims filed by trustee, it is expressly stated that the claim is subject to reduction as and to the extent that holders of the debentures referred to in the trust instrument, themselves, file claims on the debentures. Up to the time of the hearing, comparatively few claims had been filed by debenture holders. It seems probable, too, that many such holders will not file claims within the six months' statutory limit, since it has been impossible, for lack of adequate lists of owners of these bearer debentures, to give personal notice to them.

A protective committee, holding deposited debentures in an amount claimed to aggregate about $2,000,000 at the time of the hearing, opposes the petition for review.

The referee held that trustee could not file a claim on the premises made to it; that only the debenture holders could file claims on account of the existing indebtedness. His decision was based upon his finding of noncompliance with the requirement of section 57b of the Bankruptcy Act, 11 USCA § 93 (b), "Whenever a claim is founded upon an instrument of writing, such instrument, unless lost or destroyed, shall be filed with the proof of claim," in that only the trust agreements but not the debentures had been filed. Evidently, in his view, bankrupt's indebtedness was embodied in and evidenced by the debentures alone.

Trustee, however, bases its rights as creditor, not on the debentures, but on the trust agreements. In the light of its above-stated concessions, I need not consider whether or not, as express trustee for the debenture holders, it might have asserted a right to file claims in bankruptcy, to the exclusion of the debenture holders.

The question, therefore, presented on this record is whether or not, under the terms of the trust agreements, trustee is a creditor

[1] Article Seven. "Section 4. If any one or more of the events of default shall happen, the Trustee may proceed to protect and to enforce its rights and the rights of the holders and registered owners of the Debentures by a suit or suits in equity or at law, whether for the specific performance of any covenant or agreement contained in this Agreement, or in aid of the execution of any power herein granted, or for the collection of the indebtedness represented by the Debentures, or for the enforcement of any other appropriate legal or equitable remedy, as the Trustee, being advised by counsel,

and as such is to be permitted to assert a claim due from bankrupt to it, as express trustee for such of the debenture holders as have not or shall not have filed claims on the debentures within the statutory period.

It is entirely clear that parties, by their agreement, may not decide who shall be the proper party to bring proceedings at law, in equity, or in bankruptcy, to enforce a contractual obligation; the common or statutory law, itself, determines this procedural question. See Adams v. Mellon, 39 F.(2d) 80 (D. C. N. D. Ill. 1930); In re Ellis, Inc., 242 F. 156, 158 (D. C. N. J. 1917) and cases therein cited.

Normally, at common law, the promisee is such proper party; even under the code practice, it is the express trustee and not the cestui que trust who enforces an obligation running to the former, as such trustee. If, therefore, we have here a promise to trustee, as express trustee for the debenture holders, trustee would appear to be the proper party to file a claim based on that promise.

Does the fact that the promise to the debenture holders in the debentures and that to the trustee, as such, in the trust agreement, are together intended to evidence only a single debt, bar trustee's claim? That a single indebtedness may be evidenced by more than one obligation is clear. A common example is the execution of a note not in payment but as further evidence of a theretofore existing debt. Likewise, the execution by the debtor of notes and mortgage and their delivery to the creditor, as additional security for an indebtedness already evidenced by unsecured notes of the debtor. In each of these cases, while the obligation is double, the debt is single. Even though actions might be commenced or claims filed on either or in some instances on both of the obligations, eventually only the single indebtedness could be collected or be the basis for sharing in dividends. John Matthews, Inc., v. Knickerbocker Trust Co., 192 F. 557 (C. C. A. 2d, 1911); In re Battle Island Paper Co., 259 F. 921 (D. C. N. D. N. Y. 1919); Crane Iron Works v. Cox & Sons Co., 28 F.(2d) 328 (C. C. A. 3d, 1928).

While ordinarily, in cases of this kind, both obligations are payable to the same obligee whether as bearer or by name, the

---

shall deem most effectual to protect and enforce any of its rights or duties or the rights of the holders and registered owners of the Debentures. * * *

"Section 6. If any one or more of the events of default specified in clauses (2), (b) and (c) of Section 2 of this Article Seven shall happen, the Corporation covenants that it will pay to the Trustee, for the benefit of the holders and registered owners of the Debentures and coupons then outstanding, the whole amount which shall have become due and payable by the Corporation for interest and/or sinking fund and/or principal and/or premium, as the case may be, with interest upon the overdue principal and premium and installments of interest and sinking fund at the rate of five per cent per annum; and in case the Corporation shall fail to pay the same forthwith, the Trustee, in its own name and as trustee of an express trust, shall be entitled to recover judgment against the Corporation for the whole amount so due and unpaid, with interest as aforesaid, and, in case of the pendency of any receivership, insolvency or bankruptcy proceedings affecting the Corporation or its property, to file and prove a claim for the whole amount so due and unpaid, with interest as aforesaid, and to enforce any such judgment or claim against the Corporation and to collect the moneys adjudged or found to be due and payable out of any property of the Corporation wherever situated.

"Section 7. All rights of action under this Agreement, or under any of the Debentures or coupons, may be enforced by the Trustee without the possession of any of the Debentures or coupons or the production thereof on any trial or other proceeding relative thereto and any such suit or proceeding instituted by the Trustee shall be brought in its name as Trustee, and any recovery of judgment shall be for the ratable benefit of the holders and registered owners of the outstanding Debentures and coupons. * * *

"Section 13. No holder or registered owner of any Debenture or coupon shall have any right to institute any suit, action or proceeding in equity or at law for the enforcement of this Agreement or for the execution of any trust hereunder, or for any other remedy hereunder, unless such holder or registered owner previously shall have delivered to the Trustee written notice that some event of default specified in such notice has happened, nor unless also the holders and/or registered owners of twenty-five per cent, in principal amount of the Debentures then outstanding shall have made written request upon the Trustee, and shall have afforded to it a reasonable opportunity, either to proceed to exercise the powers hereinbefore granted, or to institute such action, suit or proceeding in its own name; nor unless also they shall have tendered to the Trustee reasonable security and indemnity satisfactory to the Trustee, against the costs, expenses and liabilities to be incurred therein or thereby; and such notification, request and offer of indemnity are hereby declared in every such case, at the option of the Trustee, to be conditions precedent to the execution of the powers and trusts of this Agreement and to any action or cause of action for the enforcement hereof or for any other remedy hereunder; it being understood and intended that no one or more holders or registered owners of debentures or coupons shall have any right in any manner whatever by his or their action to enforce any right hereunder, except in the manner herein provided, and that all proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the equal and proportionate benefit of all holders and registered owners of the outstanding Debentures and coupons, subject to the provisions of Section 1 of this Article Seven. Nothing contained in this Agreement or in the Debentures or coupons shall, however, affect or impair the obligation of the Corporation, which is unconditional and absolute, to pay the principal and interest of the Debentures, and the premium on all Debentures which may be called for redemption, to the respective holders of the coupons appurtenant thereto at the times and places specified in this agreement and in said Debentures and coupons, or shall affect or impair the right of action, which is also unconditional and absolute, of such holders, registered owners and bearers to enforce such payment. * * * "

problem would seem to call for a similar solution if, as in the instant case, one of them runs to a trustee as express trustee for the other obligee. I shall assume, in view of the concession, that the holders or registered payees of the debentures may, as the owners thereof, file their claims thereon. Trustee, however, as express trustee for all of the debenture holders, is the obligee of the direct promises to it contained in the trust instruments. In my judgment it, too, as such obligee has a clear legal claim as a creditor for the full amount therein promised to it, subject to the conceded reductions. This claim is "founded on" the trust agreements filed with the claims, pursuant to section 57b of the Bankruptcy Act (11 USCA § 93(b). No decision contrary to these views has come to my attention; cases cited are distinguishable on their facts.

The right of such a trustee to relief in its own name and independently of the bondholders is illustrated by the cases which even prior to the express provision of the 1925 amendment of Equity Rule 10 (268 U. S. 709, 28 USCA § 723, p. 13) and under the original Equity Rule 10 (226 U. S. 652) held that a deficiency decree, after a foreclosure, should be entered in favor of the trustee, if the trust instrument so provides. Lane v. Equitable Trust Co., 262 F. 918, 924 (C. C. A. 8th, 1919), certiorari denied (1920) 252 U. S. 578, 40 S. Ct. 344, 64 L. Ed. 725; Continental-Equitable Title & Trust Co. v. National Properties Co., 273 F. 967 (D. C. Del. 1921); see Brant Independent Min. Co. v. Palmer, 262 F. 370 (C. C. A. 8th, 1919); Equitable Trust Co. v. Washington-Idaho Water, Light & Power Co., 300 F. 601 (D. C. E. D. Wash. 1924). But cf. In re Ellis, Inc., supra. Moreover, under the terms of a trust deed, embodied by reference in the notes or bonds secured thereby, the trustee's right to maintain suit against the debtor has been recognized as superior, under certain circumstances provided by the trust agreement, to that of the bondholders. Crosthwaite v. Moline Plow Co., 298 F. 466 (D. C. S. D. N. Y. 1924); Lidgerwood v. Hale & Kilburn Corp., 47 F.(2d) 318 (D. C. S. D. N. Y. 1930); Allan v. Moline Plow Co., 14 F.(2d) 912 (C. C. A. 8th, 1926).

I come now to the cases urged as controlling in the instant case. In Penn Steel Co. v. Metropolitan Street Ry., a deed of trust provided: "The Railway Company urges and covenants that in case (1) default shall be made in the payment of any interest on any bonds hereby secured and such default shall continue for a period of three months; or in case (2) default shall be made in the payment of the principal of any such bonds when the same shall become payable, whether at the maturity of said bonds or by declaration as authorized by this Indenture, or by sale of the mortgaged premises and property as hereinbefore provided; then upon demand of the Trustee it will pay to the Trustee for the benefit of the holders of the bonds and coupons hereby secured and then outstanding, the whole amount due and payable on all such bonds and coupons for principal or interest or both, as the case may be, with interest upon the overdue principal and instalments of interest; and in case the Railway Company shall fail to pay the same forthwith upon such demand, the Trustee, in its own name, and as trustee of an express trust, shall be entitled to recover judgment against the Railway Company for the whole amount so due and unpaid." See volume 32 of Receivership Record in that case in this court at page 653.

The special master held that, by virtue of this provision, the trustee was entitled to prove claims to the extent of the face value of the bonds. Id. 645, 653–4 (1915). Judge Lacombe, sitting in this court, affirmed the master's ruling. Id. 763 (1916). Sections 4 and 6 of article 7, noted in the margin, are in my judgment even stronger in favor of the instant claims.

In Fitkin v. Century Oil Co., 16 F.(2d) 22, 24 (C. C. A. 2d, 1926), the court, in denying the right of the trustee to file the claim in an equity receivership, distinguished the Metropolitan Case on the ground that in the Fitkin Case, there was no covenant or express authorization such as is above quoted, running to the trustee. True it is that the opinion further states, referring to the Metropolitan Case, that "there the trustee was a payee of the bonds." It should be noted, however, that of the two sets of bonds and trust deeds there involved, the bonds secured by the trust deed which contained the quoted authorization were, as in the instant case, bearer bonds. See vol. 32, Receivership Record in Metropolitan Case, pp. 652, 653, 658, 659. Far from casting doubt on Judge Lacombe's decision, the Fitkin Case thus apparently approves of it. This conclusion is strengthened by the further statement in the opinion in the Fitkin Case that the right to file a claim resides in the note or bondholders exclusively, *"in the absence of authority granted to the trustee by the terms* of the mortgage." (Italics mine.)

In re United States Leatheroid & Rubber Co., 285 F. 884 (D. C. Mass. 1923), and In

re Ellis, Inc., supra, while containing language inconsistent with the views herein expressed, are distinguishable. The authority conferred upon the trustee in the Leatheroid Case, so far as the opinion discloses, was in the same general terms as in the Fitkin Case, and in the Ellis Case the court said: "A careful reading of the trust mortgage will reveal that the authority of the trustee was confined to the mortgage security." Mackay v. Randolph Macon Coal Co., 178 F. 881 (C. C. A. 8th, 1910), whatever its dicta, holds only that under the peculiar circumstances of that case the bondholders may prove their claims even though the trustee had theretofore proven a deficiency judgment. The later case of Lane v. Equitable Trust Co., supra, expressly limits the applicability of the Mackay Case. Cf. also in in this connection Allan v. Moline Plow Co., supra.

Two recent cases in this court, however, are urged upon me. In Re Amalgamated Silk Corporation, Judge Caffey, on November, 9, 1931, based his decision, without further opinion, solely upon Judge Bondy's decision in the Indiana Flooring Case, 53 F. (2d) 263, 265 (D. C. 1931).

In the Indiana Flooring Case, Judge Bondy stressed the provisions of the trust agreement similar to the last sentence of section 13, art. 7, quoted in the margin. He said: "This provision clearly establishes that it was not intended to transfer or assign to the trustee the right of action to enforce payment of the bonds (which by their terms are payable to bearer or registered holder), or to make the trustee a creditor or the real party in interest in any action brought to enforce payment of the bonds. The other provisions accordingly must be regarded as conferring no rights upon the trustee other than those usual in the event of default to enforce the security, the title to which is held by the trustee, and as restricting the bondholders' right of action only so far as it affects the enforcement of the security."

There is an important distinction between these cases and the case at bar. In the latter, it is impossible to regard section 13 of article 7 as indicating that the trustee's rights were meant to be confined to enforcement of security, for here, unlike those cases, the debentures were *unsecured*. Thus, if the corporation's promise to trustee in article 7, § 6, and the grant of authority therein and in article 7, § 4, are to have any effect, they must be held to confer upon trustee the rights of a creditor. This clearly seems to have been the intention of the parties to the agreement. Nor is the last sentence of section 13, article 7, inconsistent with the recognition of rights in the trustee other than those of enforcement of the security. Thus, in Lane v. Equitable Trust Co., supra, the trustee was allowed to recover a deficiency decree despite the presence of the following provision in the trust agreement: "No recovery of any judgment by the trust company and no levy of any execution under any such judgment upon property subject to the lien of this indenture, or upon any other property, shall in any manner, or to any extent, affect * * * any rights, powers, or remedies of the holders of the bonds hereby secured, but such lien, rights, powers, and remedies shall continue unaffected and unimpaired as before." See Lane v. Equitable Trust Co., supra (C. C. A.) 262 F. 918, at page 924; see also Continental-Equitable Title & Trust Co. v. National Properties Co., supra. Moreover, as counsel for trustee points out, the last sentence of section 13, article 7, has for its purpose merely the preservation of the negotiability of the bonds which it was feared might otherwise be impaired because they incorporate by reference the terms of an extrinsic instrument, the trust agreement. Whatever may be the efficacy of the clause in this respect, it should not be held to defeat the plain purpose of the trust agreement to confer the rights in question on trustee.

The conclusion and result reached in the instant case seem to me to be in accord with a sound public policy. Ordinarily, both in bankruptcy and in equity receiverships, the rights of creditors who do not share in the estate are purely illusory. To share therein, the claim must be filed within an extremely short time: In bankruptcy, within six months after adjudication; in equity, ofttimes even within a shorter period, fixed by the court. Such limitations are deemed to be necessary for speedy liquidation; they may, however, involve serious injustice. Especially in cases involving large bearer bond issues, notice of the proceedings may well fail to reach even a majority of the bondholders; they may thus be precluded, as such, from participation in the estate. What appears to be an entirely proper and legal device for their protection ought, in my judgment, to be looked upon with favor. A contemporaneous obligation running to the express trustee, a corporation which would have very much better facilities for acquiring knowledge and obtaining notice of the proceedings than would the individual bondholders, would seem to be such a measure. In any event, in the absence of any binding author-

ity that such a trustee may not file its claim on the express obligation running to it, I am of the opinion that its claim must be allowed.

The referee's order must be reversed, and the claim allowed.