### In re UNITED CIGAR STORES CO.

### GUARANTY TRUST CO. v. DE FOREST REALTY CORPORATION.

#### No. 276.

Circuit Court of Appeals, Second Circuit.
Jan. 8, 1934.

Mitchell, Taylor, Capron & Marsh, of New York City (Henry L. Glenn and Rollin Browne, both of New York City, of counsel), for appellant.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Edgar G. Crossman, of New York City, of counsel), for appellee.

Root, Clark, Buckner & Ballantine, of New York City, for Charles D. Hilles and others, amici curiæ.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The claimant, the Guaranty Trust Company, filed a claim in bankruptcy against the trustee in bankruptcy of the United Cigar Stores Company upon a guaranty made by it, collateral to the engagements of one of its subsidiaries, Cigar Stores Realty Holdings, Inc., contained in a trust agreement, in turn collateral to an issue of debenture bonds. The claim was for the principal of the whole issue with interest. The referee overruled the objections of the Irving Trust Company, trustee in bankruptcy of the United Cigar Stores Company, and allowed the claim. The trustee having refused to go further, a creditor of the bankrupt petitioned the District Judge to review the referee's order, and the judge affirmed it. This appeal is from that order; it too is prosecuted by the same creditor.

The facts are as follows: The Cigar Stores Realty Holdings, Inc., issued $10,000,-000 of debenture bonds on January 2, 1929, and along with them executed a contract, called the "Trust Agreement," with the Guaranty Trust Company as trustee, although no property was pledged or mortgaged as security for the bonds. The bankrupt guaranteed the issue. The trust agreement provided that Cigar Stores Realty Holdings, Inc., should pay the principal and interest as they became due, section 17, and should perform other covenants not necessary to set forth, section 23. "Events of default" were defined in section 38, among which was any proceeding of voluntary bankruptcy begun by Cigar Stores Realty Holdings, Inc.; and in the case of any "event of default," the trustee might accelerate the principal of the bonds by a declaration to that effect. Section 39 provided that: "If default be made in the punctual payment of the principal * * * when * * * the same shall become payable * * * upon declaration as provided in this agreement * * * then upon demand of the Trustee the company will pay to the Trustee for the benefit of the holders * * * the whole amount that then shall have become due and payable * * * for interest or principal, or both as the case may be. * * * Until such demand * * * the Company may pay * * * to the holder. * * * If, however, demand shall be so made, payment * * * shall be made only to the Trustee." Section 45 qualified this; it was as follows: "No holder * * * shall have the right to institute any suit * * * upon * * * this Agreement * * * unless such holder shall previously have given * * * notice of an existing event of default * * * nor unless also the holders of at least 25% * * * shall have made written request upon the Trustee, * * * provided however that nothing in this Article or elsewhere in this Agreement * * * shall affect or

impair the obligation of the Company, which is absolute or unconditional, to pay at the date of maturity \* \* \* the principal \* \* \* and interest \* \* \* to the respective holders of the debentures and coupons at the times and places therein expressed, or affect or impair the right of action, which is also absolute and unconditional of such holders to enforce such payment." The bankrupt's guaranty was, as we have said, by a collateral instrument of even date between itself and the trustee. It provided that "in case the Company" (Cigar Stores Realty Holdings, Inc.) "shall fail to pay the principal of any of the debentures \* \* \* or \* \* \* any installment of interest \* \* \* as such payment \* \* \* shall become due, United" (the bankrupt) "itself will duly and punctually pay the same"; Article first. Again: "This agreement is made \* \* \* for the benefit of the Trustee and of the several holders \* \* \* and it may be enforced directly by the holders \* \* \* as well as by the Trustee." Article fifth. In article second the bankrupt promised to indorse, and did indorse, on each bond the following: "United Cigar Stores Co. \* \* \* unconditionally guarantees to the holder \* \* \* the payment of the principal \* \* \* and of the interest, \* \* \* and \* \* \* agrees itself punctually to make such payment." The principal, Cigar Stores Realty Holdings, Inc., filed a voluntary petition of bankruptcy on August 29, 1932, and the trustee on the same day under section 39 declared the principal due, and demanded payment of the surety, United Cigar Stores Company. This being refused, that company itself became bankrupt later on the same day. The question is whether the claim against it is valid.

A promise made to pay a third person has caused difficulty to common lawyers from the beginning, especially where the promisee has no financial interest of his own in the performance; as for example, if the promise is not to pay a debt of the promisee to the beneficiary. In such cases an action on the promise must result in nominal damages only, for the promisee is in no worse position after breach than after performance; his only loss is in the disappointment of his desire that the beneficiary shall be paid, and that is not calculable in money. That in such a situation the promisee could not prove a claim in bankruptcy was all that we decided in Fitkin v. Century Oil Co., 16 F.(2d) 22, where the mortgagor's covenant with the trustee mortgagee was only to pay the bondholders; payment to them was not payment to him. However, in the case at bar the covenant was to pay the trustee itself, and its damages were the amount payable. It is true that it was to hold the money in trust, but if that were a defence in the case of any contract made with a trustee, the cestui que trust alone could recover substantial damages. That has never been the law.

Thus the trustee could sue the principal, Cigar Stores Realty Holdings, Inc., and recover full damages upon the promise in section 39 to pay to it the accelerated principal with interest. Moreover, since it was provided that upon declaration of acceleration and demand after an "event of default," the principal should pay "only" the trustee, the bondholders had no subsequent right of action; the meaning is plain that they should not. It does not follow that they might not prove in bankruptcy when the "event of default" was a voluntary petition, because their claims might be regarded as then fixed, so that nothing later could dislodge them, and the trustee's declaration of acceleration and demand necessarily followed petition filed. Whether that be true is, however, moot in the case at bar, because we think that the proviso of section 45 preserved the rights of bondholders, even though it contradicted section 39 in so far as that section declared that the trustee should be the "only" person to be paid. The proviso was certainly intended to insure the negotiability of the bonds, and for that reason, as well as because of its terms, must be deemed imperative. Therefore the case is one in which both the trustee and the bondholders have rights of action; the principal promised to pay each. The converse situation is familiar; where there are several obligors for the same liability. For example, in the case of several wrongdoers the person injured may sue each to judgment though he is entitled to but one satisfaction. Lovejoy v. Murray, 3 Wall. 1, 18 L. Ed. 129. The same is true of several obligors in contract. Drake v. Mitchell, 3 East. 251. Again, the creditor may first pursue either principal or surety to judgment, and then the other. Brooklyn City & N. R. Co. v. National Bank, 102 U. S. 14, 22, 26 L. Ed. 61; McPharlin v. Fidelity & D. Co., 162 Mich. 141, 127 N. W. 307. In such a situation the performances are in fact in the alternative, to pay the obligee in case the other obligor has not performed, and this condition survives default. So here, where instead of a single obligee and several obligors, there are several obligees and a single obligor. The debt being again single, the performances

are really in the alternative; the obligor is to pay the trustee, so far as he has not paid the bondholders, and the bondholders, so far as he has not paid the trustee. But if he pays neither, he has defaulted upon both promises, for the condition defeating each obligation is unfulfilled. Each promisee has a right of action, subject' pro tanto to a defence, in so far as the obligor may have performed the other, which even survives judgment. So Judge Mack held in Re International Match Corp. (D. C.) 3 F. Supp. 445; and Judge Lacombe in Penn. Steel Co. v. N. Y. City Rys., unreported. In Mackay v. Randolph Macon Coal Co., 178 F. 881 (C. C. A. 8), the trustee had recovered a deficiency decree upon foreclosure under a mortgage which contained a covenant to pay only the bondholders. Apparently the decree was wrong, unless Equity Rule 10 (28 USCA § 723) be construed as supplying a covenant, a point we need not consider; but right or wrong, it was res judicata and created a debt on which the mortgagee might prove. For this reason the court recognized it as a good claim, but allowed the bondholders to prove also; and although the question chiefly debated was of merger, the result was to allow two proofs for the same debt. In Re Ellis, Inc. (D. C.) 242 F. 156, the court refused to allow proof of a deficiency decree by going back to the mortgage which apparently contained no covenant to pay the trustee-mortgagee. It is difficult to see why the decree should have been thus disregarded, but, passing that, the case is merely an instance of the doctrine of Fitkin v. Century Oil Co., supra, (C. C. A.) 16 F.(2d) 22. We so read both in Re United States L. & R. Co. (D. C.) 285 F. 884, and U. S. Trust Co. v. Gordon, 216 F. 929 (C. C. A. 6). In Re Indiana Flooring Co. (D. C.) 53 F.(2d) 263, there was a covenant to pay the trustee and we cannot agree with the result. ·

■ The obligations of the principal being settled, the case depends merely on the language of the guaranty; on whether the bankrupt promised to pay the claim of the trustee against the principal for the accelerated principal and interest, as well as the claims of the bondholders. It is scarcely to be sup-

posed that the guaranty was intended to be less comprehensive than the principal's undertakings. It and the trust agreement were executed together as parts of the same transaction; we should have to be well satisfied that the guaranty covered less than the contract in chief; presumably it was upon the credit of both principal and surety that the issue was floated. Aside from that, the language was unequivocal. The surety's undertaking was divided into five articles, of which the second was a promise to endorse a guaranty upon the bonds. This was done; it was a direct promise to the holders. The third and fourth articles related to incidental matters which more properly are procedural. The first and fifth remain. The first was an engagement to pay "the principal of any of the debentures and the indebtedness represented thereby," in case Cigar Stores Realty Holdings, Inc., failed to do so; the fifth recited that the guaranty was "for the benefit of the Trustee and of the several holders." Though we should disregard the added statement that either may sue, so far as it affected to confer a right of action independently of any promise, we must consider it in determining who were the promisees, and what, the performance. From both articles taken together, it appears to us that the guaranty was of the principal's engagements as well with the trustee as with the holders. We cannot see any reason to limit the language which extended the benefit of the covenant to the trustee, and professed to give it a right of action; or the generality of the terms in which principal's default was itself described. "In case the Company shall fail to pay" means "shall fail to pay" either trustee or holders. Consequently we think that both the trustee and the holders have a right to prove. As the trustee concedes that the face of its claim may be abated by the bondholders' claims, if filed, we have no occasion to consider the possibility of double proofs and dividends upon them, up to the full value of the principal and interest. What disposition should be made of any part of the dividend upon the trustee's claim which it cannot distribute we need not now decide.

Order affirmed.