## In re ASSOCIATED TELEPHONE UTILI-
## TIES CO.

District Court, S. D. New York.
March 2, 1935.

Winthrop, Stimson, Putnam & Roberts, of New York City (Hayden N. Smith, of New York City, of counsel), for trustee.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (D. M. Tibbetts, of New York City, and Howard Duane, of Wilmington, Del., of counsel), for J. J. Morris, trustee in bankruptcy of Central Telephone Co.

GODDARD, District Judge.

This is a petition to revise a report of the special master made in the course of proceedings for reorganization of the debtor corporation, Associated Telephone Utilities Company, under sections 77A and 77B of the Bankruptcy Act (11 USCA §§ 206, 207). The special master has denied the right of the trustee in bankruptcy of the Associated Telephone Utilities Company to set off the amount of $626,964.03, due on defaulted debentures owned by it and issued by the Central Telephone Company, against a claim of $820,729.74, which Central Telephone Company has against the Associated Telephone Utilities Company.

On April 29, 1933, the Central Telephone Company (hereinafter referred to as the Central) filed a voluntary petition in bankruptcy in the United States District Court for the District of Delaware, and was adjudicated a bankrupt. The Associated Telephone Utilities Company (hereinafter referred to as the Associated) at this time was indebted to Central on two promissory notes in the amount of $820,729.74 with interest at the rate of 6 per cent. per annum from March 1, 1933. A proof of claim in behalf of Central for this amount was filed in this reorganization proceeding. On the other hand, Associated is and has been since their issue the holder of $608,900 par value ten-year 6 per cent. gold debentures issued by Central, and there was also due Associated for accrued interest on these debentures from November 1, 1932, to April 29, 1933, the sum of $18,064.03, making a total due Associated from Central of $626,964.03. These debentures were part of an issue of $1,-

000,000 par value of debentures outstanding, all issued under the terms of an agreement between the Central Telephone Company and the Central Republic Trust Company of Illinois, as trustee, dated May 1, 1928, providing for the issuance of gold debentures. A proof of claim for this indebtedness was filed in behalf of Associated in the bankruptcy proceeding of Central on or about May 26, 1933. Later, on July 3, 1933, after Central had committed two acts defined in the debenture agreement as defaults (namely, the filing of the voluntary petition in bankruptcy, and the failure to pay interest on the debentures payable May 1, 1933), the Central Republic Trust Company, as trustee of the debenture agreement, and in accordance with the provisions thereof, declared due the principal of all debentures then outstanding. On October 6, 1933, the Central Republic Trust Company, as trustee, filed a proof of claim in the bankruptcy proceedings of Central for the $1,000,000 due for the principal of the debentures then outstanding, together with the interest thereon, and for its compensation and expenses as trustee, which proof of claim, however, provided that the total amount of this claim was subject to reduction as and to the extent that holders of the debentures themselves filed claims on such debentures.

The trustee of Associated contended before the special master that the trustee was entitled to set off against the claim of the trustee of Central the principal of said gold debentures held by Associated with accrued interest thereon to April 29, 1933, and that the claim of Central should be allowed in this proceeding only in an amount equal to the difference between the two respective indebtednesses, namely, $199,644.74. To this Central objected on the ground that it was not a proper set-off. The special master sustained the objection and disallowed the set-off. The Associated excepted to the ruling of the special master and petitioned for this review.

The debentures contain the following paragraphs:

"This debenture is one of a series designated 'Series 1928' of a duly authorized issue of debentures of the company issued and to be issued under and pursuant to and all equally secured by an agreement dated as of May 1, 1928 (herein referred to as the 'Agreement') duly executed and delivered by the company to Central Trust Company of Illinois, as trustee, the trustee for the time being under the agreement (herein referred to as the 'Trustee') to which agreement reference is hereby made for a description of the rights of the holders of the debentures, the trustee and the company thereunder. Debentures are issuable under the terms of the agreement in successive series which may vary as to date, amount, date of maturity, rate of interest, and in other ways in the agreement provided. * * *

"In case default be made by the company in compliance with certain of the terms and provisions of the agreement this debenture may become or be declared due and payable prior to maturity by lapse of time with the effect and subject to the conditions provided in the agreement."

The debenture agreement of May 1, 1928, contains the following in its preamble:

"Whereas to secure the payment of the principal of and interest on such debentures so to be issued equally and ratably, without preference, priority or distinction as to participation in the benefits and protection hereof of one debenture over another otherwise than in respect of sinking funds or funds in the nature thereof, of provisions in respect of conversion thereof into or application thereof to the purchase of stocks or other securities, or provisions for the payment of interest without deduction for taxes, and for reimbursement of taxes. * * *"

And thereafter the following:

"Article Three.
"Debentures of Series 1928.

"Section 1. There is hereby created a series of debentures designated Ten Year 6% Gold Debentures, Series 1928, unlimited as to aggregate principal amount and to be issued from time to time as in this agreement provided. The debentures of the said series shall be dated May 1, 1928, shall be due May 1, 1938, shall bear interest at the rate of six per cent (6%) per annum payable semiannually on the first day of May and of November in each year. Principal of and interest on debentures of the said Series 1928 shall be payable at the principal office of the trustee in the City of Chicago, Illinois. * * *

"Section 4. Debentures of Series 1928 in the aggregate principal amount of One Million Dollars ($1,000,000.00) shall from time to time be executed by the company and delivered to the trustee, and shall be by the trustee forthwith authenticated and delivered to or upon the written order of the President of the Company."

## "Article Seven.

## "Default Provisions.

"Section 1. The following events are hereby defined as and are declared to be and to constitute 'events of default':

"(a) Default in the due and punctual payment of any interest on any debenture issued hereunder and outstanding and the continuance thereof for a period of thirty (30) days;

"(b) Default in the due and punctual payment of the principal of any debenture secured and outstanding, on maturity thereof by lapse of time or upon call for redemption as in this agreement hereof provided;

"(c) Default in the due observance or performance of or responsive to any covenant, condition, agreement or undertaking in this agreement contained on the part of the company, and the continuance thereof for a period of thirty (30) days after written notice thereof to the company from the trustee, which may without request, and shall upon the written request of the holders of one-quarter in principal amount of all the debentures then outstanding hereunder, give such notice;

"(d) If the company shall be declared a bankrupt or become insolvent or a receiver or receivers shall be appointed of the company or of its property or any part thereof and shall not be discharged within a period of thirty (30) days;

"(e) If the company shall file a petition in voluntary bankruptcy or shall make an assignment for the benefit of creditors or shall admit in writing its inability to pay its debts generally as they become due, or shall consent to the appointment of a receiver or receivers of all or any substantial part of its property; or * * *

"Section 2. In case an event of default shall occur, then in every such case the trustee may, and upon the written request of the holders of one-fourth in principal amount of all the debentures then outstanding hereunder, and upon being indemnified to its satisfaction, shall, by notice in writing to the company declare the principal of all debentures hereby secured and then outstanding to be due and payable immediately, and upon any such declaration the said principal shall become and be due and payable immediately, anything in this agreement or in such debentures to the contrary notwithstanding. * * *

"Section 4. The company covenants that if one or more events of default specified in Section 1 hereof shall occur, or if by reason of any default the principal of all the debentures shall have become due and payable, then, upon demand of the trustee, the company will pay to the trustee, for the benefit of the holders of the bonds and of the coupons issued hereunder and then outstanding, the whole amount which then shall become due and payable on all such bonds and coupons then outstanding for interest or principal or both, with interest at the rate of six per cent (6%) per annum upon the overdue principal and installments of interest; and in addition such further amount as shall be sufficient to cover the cost and expenses of collection, including a reasonable compensation to the trustee, its agents, attorneys and counsel, and any expenses or liabilities incurred by the trustee hereunder, and in case the company shall fail to pay the same forthwith upon demand, the trustee in its own name and as trustee of an express trust shall be entitled and empowered to institute such proceedings at law or in equity, as it may be advised by counsel may be necessary to recover the whole amount so due and unpaid and may prosecute any such action or proceedings to judgment or final decree, and may enforce any such judgment or final decree against the company and collect the moneys adjudged or decreed to be payable out of the property of the company wherever situated in the manner provided by law.

"All rights of action under this agreement or upon any of the debentures or coupons may be enforced by the trustee without the possession of any of the debentures or coupons or the production thereof on any trial or other proceedings relative thereto.

"Section 7. The proceeds of any judgment recovered by the trustee shall, sub-

ject to all the provisions of Section 3 of Article Five, be applied as follows: first, to payment of all costs of the suit or suits wherein such judgment may have been recovered, including all reasonable fees and expenses of the trustee, together with reasonable counsel fees; second, to the payment of all other expenses of the trust hereby created, including all moneys advanced by the trustee or the holders of debentures secured hereby after default by the company, with interest thereon at the rate of six per cent (6%) per annum; third, to the pro rata payment of all interest accrued and remaining unpaid, with interest on matured installments of such interest at the rate borne by the debentures in respect of which such interest accrued; and fourth, to the pro rata payment of the principal of the debentures issued hereunder remaining unpaid. * * *

"Section 11. All rights of action on or because of the debentures at any time issued and outstanding hereunder, or any of them, and all coupons appertaining to any such debentures, and under this agreement, are hereby expressly declared to be vested exclusively in the trustee, except only as hereinafter provided, and such rights may be enforced by the trustee without the possession of any of such debentures or coupons. Any suit, action, or proceeding instituted by the trustee upon the provisions of this agreement or upon or to enforce payment of any debentures shall be brought in the name of the trustee as trustee of an express trust and any recovery or judgment shall be for the pro rata benefit of the holders of all debentures and interest coupons at the time outstanding hereunder. No holder of any such debenture or interest coupon shall have any right to institute any suit, action, or proceeding for the enforcement of the terms of this agreement or of such debentures or interest coupons without first giving the trustee written notice, nor unless the holders of not less than one-fourth of the principal amount of all debentures at the time outstanding hereunder shall have requested the trustee in writing, and shall have afforded it reasonable opportunity, to institute such suit, action, or proceeding in its own name, and shall have offered proper indemnity satisfactory to the trustee, and the trustee shall have refused or shall have unreasonably neglected to institute such suit, action, or proceeding, and such notification and tender of indemnity are hereby declared in each case, at the option of the trustee, to be conditions precedent to the execution of the powers and trusts in this agreement provided and to any action or cause of action or for any other remedy hereunder, it being understood and intended that any one or more of the holders of debentures shall have no right in any manner whatever by his or their action to enforce any right hereunder or except in the manner herein provided; and that all proceedings at law or in equity shall be instituted, had or maintained in the manner herein provided and for the equal and proportionate benefit of all holders of debentures then outstanding; *provided, however, that nothing in this Article or elsewhere in this agreement or in the debentures or in the coupons contained shall affect or impair the obligation of the company, which is unconditional and absolute, to pay at the rate of maturity therein expressed the principal of the debentures to the respective holders thereof and the interest thereon as the same shall from time to time become due, or affect or impair the right of action, which is also absolute and unconditional, or such holders of debentures or coupons to enforce such payment or to enforce the covenant and agreement of the company or to refund any taxes; and provided that in case of the designation or redemption of a part but not all of the debentures the holder of any debentures so designated, without reference to the consent of the trustee or the request of the holders of other debentures, may individually enforce payment of his debentures, so designated, by any appropriate proceeding."* (Italics by the court.)

The right of the Associated to file the proof of claim against Central on the account of the defaulted debentures owned by Associated has been recognized by the special master and also by the trustee of the debenture agreement in the proof of claim filed by it, and such right is recognized by the following cases: In re United Cigar Stores Co., 68 F.(2d) 895 (C. C. A. 2); In re Paramount Publix Corporation, 72 F.(2d) 219 (C. C. A. 2); In re International Match Corporation, 3 F. Supp. 445 (D. C. So. D. N. Y.); Mackay v. Randolph Macon Coal Co., 178 F. 881 (C. C. A. 8).

Section 68a of the Bankruptcy Act (11 USCA § 108 (a), which by virtue of subdivision (k) of section 77B (11 USCA § 207 (k) is applicable to proceedings under 77B, provides that in all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor, an account shall be stated and one debt shall be set off against the other and the balance only shall be allowed or paid.

The Associated owns the indentures in its own right, not jointly, and thus it owns a direct obligation or debt of the Central which it can prove in its own name and for its sole benefit. Likewise, Central in its own right owns a debt of the Associated.

Both of the debts now under consideration are provable, and neither of them was acquired after the filing of the petition in bankruptcy or within four months prior thereto. The requirements that debts be mutual and entitled to set-off under section 68 (11 USCA § 108) are met if the respective creditor shall own its claim in its own right severally with the right to prove it in his own name, and the claims shall be against the debtor in its own right and severally. Remington on Bankruptcy, § 1455; Gilbert's Collier on Bankruptcy (2d Ed.) p. 1122, et seq. It would therefore seem to me that these were mutual debts and that it is an instance where set-off was proper. That mutuality existed with the right of set-off has been recognized in Re Paramount Publix Corporation, supra.

■ The special master based his conclusion chiefly upon the ground that this was not a case of set-off because he construed the provisions of the debenture agreement and debentures as depriving the holders of the debentures of Central of the right to bring suit themselves or enforce their claims themselves, and that by the terms of the indenture agreement, under which the owners of debentures bought them, it was provided that all actions to recover on the bonds or to collect upon them should be brought by the trustee named in the indenture for the equal benefit of all debenture holders. However, while various previous sections and paragraphs of the debenture agreement seem to substantiate this view, the last part of § 11, article 7 of the agreement, says: " * * * provided, however, that nothing in this Article or elsewhere in this agreement or in the debentures or in the coupons contained shall affect or impair the obligation of the company, which is unconditional and absolute, to pay at the date of maturity therein expressed the principal of the debentures to the respective holders thereof and the interest thereon as the same shall from time to time become absolute and unconditional, or such holders of debentures or coupons to enforce such payment or to enforce the covenant and agreement of the Company to refund any taxes; and provided that in case of the designation or redemption of a part but not all of the debentures the holder of any debentures so designated, without reference to the consent of the Trustee or the request of the holders of other debentures, may individually enforce payment of his debentures, so designated, by any appropriate proceeding."

This is inconsistent with preceding sections of the debenture agreement, but it clearly states that the obligations of the company (Central Telephone Company) to the respective holders of them is unconditional and absolute, and that the right of the respective holders to enforce payment of debentures or coupons shall not be impaired, and that they may individually enforce payment of their indentures.

This latter paragraph, I think, prevails over preceding paragraphs, and if there be doubt should be so construed, as courts are not inclined to deprive an obligor of its usual rights unless the intention to restrict them is clear. The net result of the provisions in the debenture agreement, it seems to me, is to provide that where a debenture holder's rights are enforced by the debenture trustee, such holders shall then benefit equally and pro rata with all other holders whose rights are so enforced.

In Lidgerwood v. Hale & Kilburn Corporation (D. C.) 47 F.(2d) 318, and the other cases cited by counsel for the trustee of the Central Telephone Company, the right to use or counterclaim was denied for the reason that the indenture agreement restricted this right.

■ The contention is also made that to allow this set-off would be unfair to other debenture holders who do not happen to have a claim against the Central Telephone Company. However, it is

quite true that a set-off in a bankruptcy proceeding often does favor a creditor who is also indebted to the bankrupt. If the set-off results in advantage to the trustee of Associated, it is one expressly conferred by section 68 of the Bankruptcy Act (11 USCA § 108). The provisions of this act may not be disregarded merely because of equitable consideration. In re Pottier & Stymus Co., 262 F. 955 (C. C. A. 2); Burton Coal Co. v. Franklin Coal Co., 67 F.(2d) 796 (C. C. A. 8).

In my judgment, the set-off asserted by the claim should be allowed, and the claim of the Central reduced and allowed in the amount of $199,649.74, with interest thereon at 6 per cent. per annum from March 1, 1933, and the report of the special master is so revised. Settle order on notice.